NANCY M. BEEBE v. THE OHIO FARMERS' INSURANCE
COMPANY.

*Fire insurance—Conditions of policy—Waiver—Authority of
agent—Misstatement in application.*

1. Where an insurance policy covers property a portion of which
   is owned in severalty by two insured persons, of which fact
   the agent issuing the policy has knowledge, an action may
   be brought in the name of one of the owners to recover for a
   loss affecting his portion of the property.

2. The failure of an insurance agent, who is authorized to issue
   policies without first referring the applications to the company,
   to indorse upon the policy a permission given by him to mort-
   gage the insured property, as required by the terms of the
   policy, will not avoid the policy, where the agent takes an
   active part in procuring the money for which the mortgage is
   given, and advises in regard to it, and assures the insured that
   she is protected by the policy; and this, even though the policy
   provides that no agent, officer, or other representative of the
   company shall have the power to waive any provision thereof
   except in writing.

3. Where such an agent, with full knowledge of the amount of
   an incumbrance upon the insured property, fills out the appli-
   cation, and has the insured sign it without reading it to her,
   the company is not in a position to avoid the policy because
   the amount of the incumbrance is greater than that stated in
   the application.

Error to Livingston.   (Person, J.)   Argued October 6,
1892.   Decided December 2, 1892.

*Assumpsit.*   Defendant brings error.   Affirmed.   The
facts are stated in the opinion.

*T. E. Barkworth,* for appellant.

*Luke S. Montague,* for plaintiff.

LONG, J.    This action was brought upon two insurance policies.    Plaintiff had judgment.    Defendant brings error.

The cause was tried before the court without a jury, and the court found substantially that the plaintiff was the owner in fee of a farm situate on sections 8 and 17, in the township of Putnam, in Livingston county, the land being used together as one farm.    On the day the policies were issued (June 30, 1890) there was situate upon that portion of the farm on section 8 a dwelling-house occupied by plaintiff as her residence, a barn, storehouse, pigpen, corn house, crib, and wheat house; and upon that portion of the farm on section 17 another barn.    These barns were within 10 rods of each other, a highway running between them, and the other barns were all within 12 rods of the barns; both barns and the other buildings being used for general farm purposes.    The plaintiff kept upon the farm stock, tools, and implements, and had crops and produce upon it.

On the above day, the defendant issued its two policies, —the one, No. 1,440, covering barn No. 1, on section 17, to the amount of $750, and barn No. 2, on section 8, at $150; and the other policy, No. 1,441, made to the plaintiff and Mrs. Sophia Webb, and covering dwelling-house No. 1, household furniture, barn No. 1, hay, grain, fodder, and seeds while therein, live stock while therein and against lightning on the farm, store-house, horse barn, hay, grain, and fodder while therein, live stock while therein and against lightning on the farm, farming implements, wagons, carriages, and harness while in barns or barn insured, dwelling-house No. 2, household furniture and clothing while therein, barn No. 2, hay, grain, fodder, and seed while therein, pigpen, corn house, crib, wagon house, wagons, carriages, and farm tools while therein, and the wheat house, in the total sum of $4,700.    A writing was indorsed on policy 1,441, that " it is understood that

produce is covered in barns, in granary, in crib, and hay stacks within twelve rods of the buildings." December 17, 1890, further insurance to the sum of $800 was placed in policy No. 1,440, "on produce while in barn and sheds, the same being the barn south of the road on section 17, and designated originally in said policy No. 1,440 as 'barn No. 1 and foundation.'"

At the date the policies were issued, Gov. Felch held a mortgage of $1,300, with accrued interest thereon of $700, on the 20 acres of land on section 17. One Thomas Burkett held a chattel mortgage for $500, given by plaintiff upon 50 acres of beans then growing on the farm, the chattel mortgage being collateral and additional security for the same indebtedness covered by a real-estate mortgage held by Burkett. Permission was given upon the policies for the chattel mortgage of $500, as additional security, to be placed on produce; "loss, if any, on produce payable to Thomas Burkett, mortgagee, as his interest may appear;" and upon policy No. 1,441 was indorsed: "Loss, if any, on real estate payable to Thomas Burkett, mortgagee, as his interest may appear." Upon policy No. 1,440 was indorsed: "Loss, if any, on real estate payable to A. Felch, mortgagee, as his interest may appear." August 15, 1890, the defendant, through its agent, further indorsed upon the policies: "Further chattel mortgage for $700 permitted, to put in and secure crops, but $350 returned, and not used."

At the date the policies were issued, John Dyer held a bill of sale given as security upon certain personal property owned by the plaintiff. This was dated June 26, 1890, and was to secure the sum of $200. On the day the policies were issued, Mr. Morris, the agent of the defendant company, dictated a new bill of sale to secure the payment of the same indebtedness to Mr. Dyer, to take the place of the one of June 26, 1890. This was deliv-

ered to Mr. Dyer, and the old one taken up. Also, on the date the policies were issued, Enoch Smith held a chattel mortgage given by the plaintiff to him to secure the payment of about $200. Just what personal property it covered is not shown. October 9, 1890, the plaintiff gave to Smith a new chattel mortgage to take the place of the one last mentioned, and to secure the same indebtedness; thereby mortgaging to him a horse, a piano, and 12 acres of growing wheat. The horse and piano were insured by policy No. 1,441; but the wheat was still growing on the farm at the time the fire occurred, and none of the property covered by this mortgage was destroyed by the fire. The bill of sale to Dyer and the mortgage to Smith, and the renewal of the same, were known to defendant's agent, but no permissions were indorsed on the policies for the same. No steps were taken by the company to cancel the policies before the fire.

Each policy was preceded by a written application, which was made a part of the policy, and each recited:

"This policy is based upon an application and survey of the property on file, which is hereby referred to as forming a part of this policy."

The following clauses were also printed in and made a part of each policy:

"If the property, real or personal, covered by this policy, be or become incumbered by a mortgage, trust deed, judgment, or otherwise, this entire policy shall be void, unless otherwise provided by agreement indorsed hereon or. added hereto."

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof, or if the interest of the insured in the property be not truly stated herein, or in case of any fraud or false swearing by the insured touching any matter relating to this insurance, or the subject thereof, whether before or after a loss."

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if the interest of the insured be other than unconditional and sole ownership, * * * or if the subject of insurance be personal property, and be or become incumbered by a chattel mortgage."

"If an application, survey, plan, or description of property be referred to in this policy, it shall be a part of this contract, and a warranty by the insured as to material facts."

"This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements, or conditions as may be indorsed hereon or added hereto; and no officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto; and, as to such provisions and conditions, no officer, agent, or representative shall have such power, or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto; nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

In the written application for policy No. 1,440 occurred the question, "Is the property incumbered?" The written answer was, "Yes." Then in the application is the following question: "If so, what amount, and the value of the premises?" The written answer is "$1,300,—$1,800." Each of the written applications contains this clause:

"The applicant hereby declares and warrants that the above answers and statements are true, and that no statement contradictory to the above was made to or by the agent of the company, and he agrees that this declaration shall be the basis and form part of the contract or policy between insured and the company."

January 17, 1891, a fire occurred without the fault of the plaintiff, which destroyed the barn mentioned in policy No. 1,440 as "Barn No. 1," and a large amount of

insured personal property, consisting of hay, cornstalks, oats cut and stored, harness, farming implements, 671 bushels of beans, straw partly in barn and partly in stack within 12 feet of the barn, beanpods in barn and shed adjoining, and grain bags, making total loss under both policies of $2,343.19, for which plaintiff had judgment. The value of the barn was in excess of the insurance.

The objections to the proceeding relate entirely to the conclusions of law reached by the court below, upon the grounds:

1. That the plaintiff could not bring suit on both policies, joining the same in one action and in her sole name.

2. That policy No. 1,440 was void, because the amount of the Felch mortgage was incorrectly stated in the application.

3. That the policies were void because the chattel mortgages were not permitted by writing indorsed upon them.

It appeared in the findings of the court that no part of the property belonging to Sophia Webb was destroyed by fire. The property covered by policy No. 1,441 belonged partly to the plaintiff and partly to Sophia Webb, each owning in severalty their respective shares, although the property thus secured was commingled and used in common by them for farming purposes. The only question bearing upon title to the personalty in the application for that policy was addressed both to the plaintiff and Sophia Webb, as follows: "Are you the absolute owner of the personal property to be insured? *Answer.* Yes." It is evident that, if the property of both of the insured under this policy had been destroyed by fire, a joint action could have been brought by them, and the proceeds of the judgment afterwards apportioned between them according to their respective interests in the property. *Castner v. Insurance Co.,* 46 Mich. 18. In the above case it was said:

"When the entire property belongs to the persons insured, it can make no necessary difference to the insurer in what way their interests are apportioned. If they deem it material, they should inform the applicant before accepting his money."

In the present case, much more clear is it that the insurer should not take advantage of this fact, for the reason that Mr. Morris, the agent, was fully informed where the title rested, and had assured the plaintiff that her interests were fully protected under the policies. Neither was the answer to the question in the application as to title of the personal property contrary to the true state of facts. Each owned in severalty, and they were the absolute owners of it.

It is contended:

1. That there was material misstatement as to the amount of incumbrance on the real property in policy No. 1,440.

2. That the placing of the chattel mortgages on the property, without the written permission of the company indorsed on the policy, worked a forfeiture.

It appears from the findings of the court below that Mr. Morris, the defendant's agent, was clothed with full power to issue policies. He took the applications, approved them, and, without forwarding them to the company, at once issued the policies, having been furnished with blanks for that purpose. Before the policies were made out, and at and before the applications were made, he knew of the Felch mortgage and the accumulated interest. In the presence of the insured he filled out the applications, and told them to sign, without reading the applications to them, or advising them of the contents. He knew all the facts in regard to the mortgage incumbrance, and the situation of the personal property with its incumbrances. After the applications were made, he assured the parties that they were fully protected under the policies. He

also knew of and permitted the additional mortgages to Smith and Dyer, and advised Mrs. Beebe in the execution of them. No part of the property covered by the Smith and the Dyer mortgages was destroyed.

It is contended, however, that by the terms of the policies the plaintiff cannot be heard to say that this was done by and with the full knowledge of defendant, as by the terms of the policies no officer, agent, or other representative of the company had power to waive any provisions or conditions of them, except such as by the terms of the policies might be the subject of agreement indorsed on them, etc. The claim is made that this principle was decided in *Cleaver v. Insurance Co.*, 65 Mich. 527. In that case the policy provided that the agent—

"Has no authority to waive, modify, or strike from the policy any of its printed conditions; * * * nor, in case this policy shall become void by reason of the violation of any of the conditions thereof, has the agent power to revive the same."

The question involved there was whether the taking of $2,000 additional insurance in another company avoided the policy. Mr. Quinn was the agent of the company, and the plaintiff claimed to have spoken to him about the additional insurance, and after he received his additional policy he claims to have been told by Quinn that it was all right. It was said by this Court that that was not a case where the insured had a right to rely upon the action of the agent, or to presume that his action was known to the company and ratified by it. But in the present case it appears that the agent stood in place of the company, with full power to issue policies without first referring the applications to the company; and the plaintiff relied upon, and had a right to rely upon, the agent, and to presume that the company had knowledge of his acts, and ratified them. If the Cleaver case, *supra,* is to be construed as

laying down such a doctrine as contended for here, it ought at once to be overruled. But we think the case is clearly distinguishable. The present case presents features by which, if that doctrine is applied, the grossest fraud is to be perpetrated upon the plaintiff. Morris, the agent, is an attorney at law, living near the plaintiff. He has been her legal adviser, and knew the situation and surroundings of her property as well as the plaintiff did. He filled out the applications, did not read them to the plaintiff, advised just what property each should cover, knew the amount of the Felch mortgage and interest accrued, knew the amount of each chattel mortgage, and in fact assisted the plaintiff in procuring the money on each. When all had been completed, he assured the plaintiff that the policies were all right, and that she was fully protected; and yet it is gravely contended here that she is not in a position to set up these facts, because the policy contains a clause that no officer, agent, or other representative of the company shall have power to waive any provision of the policy. If no officer, agent, or other representative of the company could waive it, then there could be no waiver. It is like the case of *Westchester Fire Ins. Co. v. Earle*, 33 Mich. 143. In that case the policy provided that there should be no waiver of any of the printed or written conditions, except in writing on the policy, and the Court said (p. 153):

" The condition, literally applied, would prevent any unindorsed consent by the company itself, by resolution of its board, or by act of its officers, as effectually as by any one else. And the case seems to settle down to the simple question whether a person who has agreed that he will only contract by writing in a certain way precludes himself from making a parol bargain to change it."

In the present case it is attempted, as in *Westchester Fire Ins. Co. v. Earle*, *supra*, to limit every one connected with the company, either as officer, agent, or representative, to waive by parol the requirements of the policy. The

agent had the right, under the policy, to grant permission to place other chattel mortgages upon the property, but was required to write such permission upon the policy. He granted the permission, took an active part in procuring the money upon the mortgages, advised in regard to it, and assured the plaintiff that she was protected, though he did not enter in writing upon the policy the permission to do so. With the power vested in him by the company to issue policies, we think it would be a gross fraud upon the insured to hold that this condition was not waived by the consent of the company. If the company itself could waive compliance with this condition, then it was waived, as held in the case above cited.

What we have said above applies equally to the contention about the Felch mortgage. It is said that, inasmuch as the application and the policy provided that the statements in the former should be treated as warranties on the part of the insured, therefore the representation in the application that the incumbrance was $1,300, when in fact it was $2,000, was such a misstatement that the policy was void, and no recovery could be had for that reason. As is seen from the findings of the court below, the agent of the company knew just what the incumbrance was. He filled out the application, had plaintiff sign it without reading it to her, assured her it was all right, and that she was fully protected under it. She was not asked to state the amount of the incumbrance, and no fraud or deceit was practiced by her. She did not know of the printed clause in the policy in reference to warranties, and the court found that she was not negligent or careless in failing to read the application, under the circumstances, and that she and Mrs. Webb both understood and believed from the conduct and acts of the defendant's agent that the application stated the facts. Under these circumstances, the defendant company is not in a position to insist upon

the forfeiture of the policy. Instead of a fraud being practiced upon the company, it must be presumed to have the knowledge which its agent possessed; and it would be a gross fraud upon the plaintiff to permit the company to take advantage of such a misstatement in the application, and hold the policy void by reason of it. The case falls clearly within the principle laid down in *Tubbs v. Insurance Co.,* 84 Mich. 651; *Mich. Mutual Life Ins. Co. v. Reed,* Id. 531, and cases there cited; *Ætna, etc., Ins. Co. v. Olmstead,* 21 Id. 252. In the last case it was said by Mr. Justice COOLEY:

" The general rule undoubtedly is that, in the absence of fraud, accident, or mistake, a party must be conclusively presumed to understand the force of his contracts, and to be bound by their terms. But it cannot be tolerated that one party shall draft the contract for the other, and receive the consideration, and then repudiate his obligation on the ground that he had induced the other party to sign an untrue representation, which was, by the very terms of the contract, to render it void."

We think the court below, under the evidence and facts shown, very properly ruled that the policy was not rendered void by the misstatement of the amount of the Felch mortgage in the application.

Some contention is made that the personal property destroyed was not covered by policy No. 1,441. We think the two policies, taken together, show what the intention of the parties was, and that the property so destroyed was covered by and included in the policy.

Judgment is affirmed, with costs.

MCGRATH, C. J., MONTGOMERY and DURAND, JJ., concurred. GRANT, J,, did not sit.