REDIKER *v.* QUEEN INSURANCE CO.

1. Fire Insurance—Ownership of Property Insured—Pleading—Variance.

A declaration upon a fire-insurance policy, alleging that it was issued to plaintiff and his copartner, that the firm assigned it to plaintiff, and that at the time of the execution of the policy, and from the time of said assignment until the loss, plaintiff had an interest in the property insured, "being the sole owner thereof," when construed as a whole, shows the ownership by plaintiff of an undivided interest before and of a sole interest after the assignment, and, therefore, proof of an assignment to plaintiff of his copartner's interest in the property does not constitute a variance.

2. Same—Evidence.

Under a declaration on a fire policy issued to plaintiff and another and assigned to plaintiff, alleging that at the time of the loss plaintiff was the sole owner of the property insured, evidence of an assignment to plaintiff of the interest of the co-insured in the property is admissible, although not covered by express averment.

3. Same — Waiver of Conditions in Policy — Authority of Agent.

A provision in a policy of insurance that the same shall be void, unless otherwise provided by agreement indorsed thereon, if the property become incumbered by a chattel mortgage, may be verbally waived by the agent who issued the policy, although the policy provides that "no officer, agent, or other representative" of the insurer shall have power to waive any provision thereof except in writing. *Beebe* v. *Insurance Co.,* 93 Mich. 514, followed.

Error to Schoolcraft; Steere, J. Submitted October 24, 1895. Decided December 3, 1895.

*Assumpsit* by Paul Rediker against the Queen Insurance Company of America on a fire-insurance policy. From a judgment for plaintiff, defendant brings error. Affirmed.

<i>C. W. Dunton (E. C. Chapin,</i> of counsel), for appellant.

<i>Walsh & Pardee,</i> for appellee.

HOOKER, J.   The plaintiff recovered a judgment upon a
policy of insurance, from which the defendant appealed.
The policy was issued to the plaintiff and one Miller, his
partner.   Subsequently plaintiff bought Miller's interest
in the property, and took an assignment of the policy
from the firm.   At the time of the assignment, the plain-
tiff gave a chattel mortgage upon the property, to secure
a loan.   The consent to the assignment of the policy
appeared in writing upon the policy, the plaintiff having
procured it from defendant's agent.   The plaintiff tes-
tified that he "left the policy with the agent, at the time
he bought his partner out,   *   *   *   for him to fix up the
insurance for him, and assign it from Miller & Rediker to
his own name."   He identified the indorsement as "the
indorsement Mr. Marsh [the agent] gave him, with the
consent of the company that they were satisfied that the
business was fixed up."   On cross-examination he admit-
ted giving the chattel mortgage for $650.   On redirect,
he testified that the money was received from Mr. Marsh,
the agent (who, apparently, was connected with the bank
through which the money came), and that he told Marsh
that he "was going to put a mortgage upon the stuff,"
and that he had $1,000 insurance, and "guessed the mort-
gagee was safe;" that he handed the policy to Marsh, and
told him to fix it up, and Marsh said, "All right;" and
that, when he handed it back, "he said it would be all
right,—that he was sure it was all right."

The policy was the Michigan standard fire policy.   It
contained the following conditions, plainly printed, viz.:

"This entire policy, unless otherwise provided by agree-
ment indorsed hereon or added hereto, shall be void if
the insured now has, or shall hereafter make or procure,
any other contract of insurance;   *   *   *   or if the inter-
est of the insured be other than unconditional and sole

107 MICH.—15

ownership; or if the subject of insurance be personal property, and be or become incumbered by a chattel mortgage. * * * This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements, or conditions as may be indorsed hereon or added hereto; and no officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy, except such as, by the terms of this policy, may be the subject of agreement indorsed hereon or added hereto; and, as to such provisions and conditions, no officer, agent, or representative shall have such power or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto; nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured, unless so written or attached."

The first question arises over the introduction of evidence of the assignment of Miller's interest in the property insured, and the policy, to Rediker, his former copartner. This testimony is said to be a variance from the cause set up in the declaration, in that the declaration alleges that the policy issued to Miller & Rediker, and afterwards was assigned to Rediker, and in another place states that "Rediker, from the time of the issuing of the policy until the fire, was the sole owner of the property." It is said that, "if the property was owned jointly by Miller & Rediker, the plaintiff could only recover on a showing of the purchase of Miller's interest in the property, of which there is no allegation; while if, at the time, Rediker was the sole owner of the property, as the declaration alleges, then the policy, in the first instance, had issued to one who had no insurable interest in the property." If this were so, the assertion that the declaration contains two distinct statements, diametrically opposed to each other, would be true; but while, upon demurrer, this might possibly be held to be the effect of the language used, it may receive a more lenient criticism when the question is raised upon the trial. The

declaration does say that the policy was issued to Miller & Rediker, and that it was assigned to Rediker, and it does in terms allege that Rediker was the sole owner of the property in fee simple. The allegation is that—

"At the time of the making, execution, and delivery of said policy of insurance as aforesaid, and from the time of said assignment until and at the time of the loss and damage hereinafter mentioned, he had an interest in said insured property to a large amount, * * * being the sole owner thereof, in fee simple absolute."

This allegation should be read in connection with the preceding statement. It clearly shows that he owned only an undivided interest before the assignment, and that, by such assignment, he acquired a sole interest in the property. This being so, there is nothing left of the question, except that the failure to allege the assignment of Miller's interest in the property should have precluded the introduction of testimony of such assignment, which evidence was taken under objection. We think the declaration shows, first, that at the execution of the policy Rediker was not the sole owner, and as clearly that at the time of the loss he was such owner. This was not the material question, and it was unimportant how he acquired the title. *Monaghan* v. *Insurance Co.*, 53 Mich. 239.

Was the policy avoided by the mortgage? We think this case falls within the decision in the case of *Beebe* v. *Insurance Co.*, 93 Mich. 514, and, therefore, that the court did not err in admitting the testimony upon the question of waiver, or in submitting the case to the jury.

The remaining assignment of error is that the verdict is excessive. The verdict was for $200, loss on fixtures, and $675, for loss upon stock. At the time the verdict was rendered, counsel stated that upon the stock it was $25 or $50 in excess of the amount authorized by the testimony. Plaintiff's testimony showed an aggregate loss of $1,446.95, of which $671.20 appears to have been upon articles in the nature of stock. Our attention is

not called to the evidence which warrants our saying that they were not. A small addition of interest would have increased this sum to the amount of the verdict. The loss occurred on September 15, 1893, and the verdict was rendered in January, 1895. We cannot, therefore, say that the verdict was excessive.

The judgment will be affirmed.

The other Justices concurred.