129   335
s134   358

</div>

LORD *v.* NATIONAL PROTECTIVE SOCIETY.

1. BENEFIT SOCIETIES—NONPAYMENT OF ASSESSMENTS—FORFEITURE —ESTOPPEL.

 The acceptance of past-due assessments by a benefit society, and their retention until after commencement of suit by the beneficiary, estop it to set up a forfeiture for nonpayment within the stipulated time.

2. SAME—SICK BENEFITS—EXEMPTIONS—SURGICAL OPERATIONS.

 A provision in a sick-benefit certificate, that it should not cover sickness resulting from surgical operations not necessitated by injury, will not deprive the insured of benefits accruing after an operation which was resorted to as a means of curing a pre-existing disease, and which did not cause any independent disability.

Error to Lapeer, Smith, J. Submitted November 20, 1901. Decided January 28, 1902.

*Assumpsit* by Leon Lord against the National Protective Society of Bay City on a benefit certificate. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Reversed.

*R. L. Campbell* and *Geer, Williams & Halpin*, for appellant.

*Herbert W. Smith*, for appellee.

MOORE, J. The plaintiff brought this suit to recover a claim against defendant because of his illness for a period of several weeks. The trial judge directed a verdict in favor of defendant. A written application was made, followed by a certificate of insurance, the material parts of which read as follows:

Application: " I hereby agree that this accident indemnity does not extend to nor cover disappearance, nor to any bodily injury of which there shall be no external or visible signs, nor to medical nor surgical treatment not necessitated by injury or made within ninety days of its occurrence.     *     *     *

"And I hereby further agree that the society shall not be liable for sickness or disease originating during the first ninety days, or after date of reinstatement under same, that this certificate is in full force and effect.

"I am aware and agree that I should be entitled to benefits for sickness only for the actual number of consecutive days that I am confined to the house, and under the care and subject to the personal calls of a registered physician in good standing, following the first week's sickness.     *     *     *

" I hereby warrant that the foregoing answers made to all the questions on both sides of this application are complete, true, and correct, whether written by the applicant or not; and if the answers and statements made are not full, complete, and true, or if any condition or agreement shall not be fulfilled as required by such certificate, then the certificate issued hereon shall be null and void, and all money paid thereon shall be forfeited to said society. And I hereby agree that they, and the terms of this certificate to be issued in consequence hereof, and the by laws,

amendments, or alterations that may be made thereto, shall be the basis of membership between me and said society."

The certificate reads:

"For and in consideration of the payment of the membership fee, and of the representations and agreements and warranties contained in the application for membership, and the further payment of the monthly premium of one dollar on or before the first day of each month hereafter, the National Protective Society does hereby accept Leon Lord  *  *  *  as a member, and by virtue of said membership entitling the member to all the benefits given under his policy.  *  *  *

"After membership for ninety days, without delinquency, immediately prior to the beginning of sickness, should the member, by reason of sickness or disease, be wholly incapacitated from transacting any and every kind of work or business, and as the result thereof be entirely and continuously confined in the house, and under the charge and subject to the personal calls of some regularly qualified physician, the society will pay the said member, as hereinafter provided.  *  *  *

"And it is further provided and understood that this policy shall cease and be void unless the payments to be made thereunder shall be promptly paid on or before the first day of the month in advance, and, if not so paid, the society shall not be liable to pay the sum assured, or any part thereof, and all payments heretofore made thereon shall be forfeited and become the property of the society. *  *  *"

On the back of the certificate are the following:

"This certificate of membership is subject to the following conditions and requirements, which are referred to on face of policy:  *  *  *

"The insurance under this contract shall not extend to nor cover disappearance, or injury, whether fatal or non-fatal, of which there is no visible mark on the body of the injured; nor extend to nor cover accidental injuries, sickness, or death resulting directly or indirectly from  *  *  * medical or surgical treatment not necessitated by injury, or operations, except amputations necessitated by injury, and made within ninety days of happening of same. *  *  *

"If at any time the holder thereof, by reason of non-payment of dues on the first of each month, allows his certificate to lapse, said member may be reinstated under said certificate, if he so desires, provided he is in good health and free from injury on date of said reinstatement; and it is understood and agreed that the acceptance by the society of delinquent dues does not entitle the member to benefits of any kind, the cause of which arose during such delinquency, nor if occurring on the day of reinstatement, and that, in case of such reinstatement, benefits shall accrue solely on the same terms as though a new application had been made and a new certificate issued.  *  *  *

"Failure to pay any premium required by the society, whether the member is disabled or not, or a continuance of a period of fifty-two weeks' total disability by accident or thirty-two weeks by sickness, or the loss of one or two limbs or both eyes, will immediately terminate membership and insurance in this society. A printed or written notice mailed, postage prepaid, to the last address given as it appears on the books of the society, shall be considered a legal notice.

"The observance of the provisions and conditions aforesaid, the strict compliance therewith, and the continuance of this contract are conditions necessary to the insurance hereof, and to its validity and enforcement, and no waiver shall be claimed by reason of the acts of any agent or person, unless such acts shall be specially authorized in writing over the signature of the secretary of the society."

The record shows that the plaintiff, on June 15, 1899, made application to become a member of the defendant society. Mr. Hurd, the solicitor, at the time of taking plaintiff's application, stated to him that the monthly dues of $1 could be paid at any time during the month, and that "lots of the members paid late in the month," or words to that effect. The certificate was issued to plaintiff, and dated at Bay City, June 16, 1899. The dues were paid up to August 1st at the time the application was made to Mr. Hurd, he at that time directing plaintiff to pay the subsequent dues to William Swan, defendant's local secretary at Imlay City.

The payment of $1 for August was made on August 25th by Emma Lord, plaintiff's sister, who also made all the

other payments. Before this money was paid, she asked Mr. Swan if it made any difference paying so late in the month, and he replied that it did not, and added, in almost the words of the soliciting agent, that "lots of the members paid late in the month." Relying upon this statement, the money was paid. A day or two after making this payment, Miss Lord received a notice, sent from the home office, that failure to make the August payment had caused the certificate to lapse, and Mr. Lord stood suspended, and directed him to be reinstated by paying $1 to their local secretary or at the home office within 10 days, if in good health. The August dues having a day or two before the receipt of the notice been paid and accepted by the local secretary, Miss Lord thought the notice required no further attention. No health certificate was ever asked for or furnished, nor did plaintiff, nor any one for him, ever sign, nor was he asked to sign, any request for reinstatement. The September money was paid on or about September 6th, and was entered on the receipt book in the ordinary way, no health certificate or other blank being required or furnished. October 2d the dues for October were paid, and in the ordinary way, and differed in no way, as far as the insured knew at that time, from payments made on or before the 1st of the month.

Plaintiff was taken sick with an attack of appendicitis on September 29th, at Peterborough, Ontario, and immediately notified the defendant company. The defendant company wrote plaintiff that they could not consider his claim, because he had lapsed August 1st for nonpayment of dues. At this time the local secretary had not remitted to the home office the August and September dues, which had been paid to him by Miss Lord. In a letter written by them on October 11th in reply to one from Mr. Campbell, plaintiff's attorney, pointing out to them that plaintiff had paid his money to Mr. Swan, and that he expected his indemnity, the defendant society wrote they had no record of having any dues from Leon Lord, and asked that receipts be sent. This was done October 13th, plaintiff's

attorney at the same time saying that Mr. Lord's people had tried to keep him in good standing. To this the defendant replied, saying that it would send its adjuster to assist in settling this claim. The adjuster—Mr. Horton—came, and was informed of the circumstances under which the money was paid, and why, and was also told that plaintiff had undergone an operation for appendicitis, but raised no objection to the claim on that ground. Neither did the society in any of its correspondence.

When Mr. Swan, the local secretary of defendant at Imlay City, to whom the money had been paid, made his return for October, some time before the 25th of the month and after the 11th, he sent $3 to the company on account of plaintiff, and stated that the $3 was for August, September, and October dues of Mr. Lord. The money was accepted and retained at the home office, and has never been returned, nor any offer to return made. The society has never refused to reinstate a member on the payment of the current month's dues without a reinstatement fee.

The circuit judge was of the opinion plaintiff could not recover, because the authority of the local agent was restricted, and that he could not waive the forfeiture clause by assuring the plaintiff that payment any time during the month would be sufficient, and by accepting the August, September, and October payments. The record discloses the collections were made by the local secretary; that the insured had been told from the time he made his application that payment any time during the month would be sufficient. The payments were made to the local secretary for each of the months of August, September, and October as payments of dues. They were accepted by him in payment of the dues. They were not forwarded as made by him to the home office, but were retained by him until he forwarded his October report, when he included them in his report as dues from Mr. Lord for the months of August, September, and October. The home office did not repudiate his acts, and decline to receive the money as dues, and return it, but, at

the time suit was brought, it retained the money, and still has it. Under this condition of things we do not think it necessary to discuss whether the local agent could waive the time of payment of these dues or not. It was one of the things the home office could waive. The law does not favor forfeitures, and we do not think the home office can receive and retain this money when it was paid as dues, and at the same time claim a forfeiture. See *Beebe* v. *Insurance Co.*, 93 Mich. 514 (53 N. W. 818, 18 L. R. A. 481, 32 Am. St. Rep. 519); *Rediker* v. *Insurance Co.*, 107 Mich. 224 (65 N. W. 105); *Hilt* v. *Insurance Co.*, 110 Mich. 517 (68 N. W. 300); *Turner* v. *Casualty Co.*, 112 Mich. 425 (70 N. W. 898, 38 L. R. A. 529, 67 Am. St. Rep. 428); *Jones* v. *Assurance Co.*, 120 Mich. 211 (79 N. W. 204), and the cases there cited; *Wallace* v. *Mystic Circle*, 121 Mich. 263 (80 N. W. 6), and the cases there cited.

The circuit judge was also of the opinion that plaintiff was not entitled, under the certificate, to any benefit which accrued after the operation for appendicitis. The plaintiff gave testimony tending to show that he was taken ill, and was obliged to go to the hospital, where it was found he was suffering from appendicitis. After he had been ill 10 or 11 days, the attending physicians decided that, in the proper treatment of the disease, a surgical operation was necessary. One of the physicians testified:

"I found him suffering from an acute attack of appendicitis, for which I treated him medically until the 10th of October. Plaintiff had symptoms of suppuration in the region of the appendix, which demanded immediate surgical treatment for the purpose of removal of the pus and diseased tissue and establishing drainage. * * * The operation was imperative in plaintiff's case to save his life, inasmuch as the pus was burrowing in an unusual direction, upwards under the liver, which, without operation, would certainly have caused death.

"*Q.* State whether or not the operation performed by you on October 10, 1899, caused, either directly or indirectly, any sickness separate and distinct from the sickness or disease previous to that time?

"*A.* It did not."

If this testimony is true, it cannot be said the illness occurred because of surgical treatment, but, on the other hand, that the illness made the surgical operation a necessity as a means of curing the illness.

Some other questions are presented, but we think they can readily be cared for by the learned circuit judge.

Judgment is reversed, and new trial ordered.

Hooker, C. J., Grant and Montgomery, JJ., concurred. Long, J., took no part in the decision.