# CHARLESTON.

## Coles *v.* Jefferson Ins. Co.

Submitted June 18, 1895—Decided Nov. 23, 1895.

1. Insurance—Agent's Authority—Jury.

   The jury, under the instruction of the court, must determine, from the facts of the case, the existence, nature, and extent of the power and authority of the agent of the insurance company.

2. Insurance—General Agency.

   If a general agency exists, it is *prima facie* co-extensive with the requirements of the business at the given time and place.

3. Insurance—Agent's Authority.

   The question, what power did the insurance company hold the agent out to the public as possessing, may determine the extent of his power, rather than the power the agent in fact possessed.

4. Insurance—Waiver by Agent.

   Such general agent may waive forfeitures and conditions in the policy, notwithstanding a provision therein that no agent has such power.

5. Insurance—Application—Mistake of Agent.

   If the facts regarding the risk are correctly stated to the agent, but erroneously inserted by him in the application, the company is chargeable with his error or mistake.

6. Insurance — Agent's Authority — Contemporary Insurance.

   He may consent to contemporary insurance on the property taken through him at the time in another company.

7. Insurance—Agent's Principal.

   A provision in the application or in the policy making him the

agent of the insured and not of the company can not change his legal status as agent of the company, or the law of agency, if he is in fact the agent of the latter.

A case in which the above doctrine is discussed and applied.

BUTCHER & HARDING for plaintiff in error.

C. H. SCOTT, L. H. KEENAN and DAYTON & DAYTON for defendant in error:

I.—*Party taking application is agent of the company.*—31 W. Va. 851; 1 Beach, Ins. § 370 and notes.

(*b*)—*Company responsible for such agent's act and knowledge in making out application.*—18 S. E. Rep. 191; 28 Gratt. 585; 8 W. Va. 474, 493; 13 Wall. 222; 36 N. Y. 550; 31 W. Va. 851, 856; 31 Minn. 17; 30 Hun, 473; 31 Conn. 517; Wood, Ins. §§ 400-401; 25 W. Va. 622; 28 W. Va. 584; 33 W. Va. 526; 28 Gratt. 389; 76 Va. 575; 86 Va. 969; 1 Beach, Ins. §§ 365, 366, 367, 370, 388, 389, 396; 58 Fed. Rep. 723.

(*c*)—*Policy to be liberally construed in favor of insured.*—12 W. Va. 116.

II.—*The increased hazard by adding other goods.*—8 W. Va. 605; 11 W. Va. 116; 53 N. W. Rep. 538; 97 N. Y. 188; 36 N. Y. 548; 30 Pac. Rep. 42; 94 Mo. 353; 2 Beach, Ins. c. 21, 22, 23, §§ 802, 706, 707, 708, 709, 710, 742, 751 and notes.

III.—*Additional insurance.*—10 W. Va. 507; 61 Mich. 635; 16 Pet. 495, 508; 22 N. Y. 402; 8 Mont. 419; 26 Ill. App. 228.

IV.—*Proofs of loss waived by company's denial of liability.*— 10 W. Va. 583; 21 W. Va. 368; 33 W. Va. 526.

HOLT, PRESIDENT:

On writ of error to a judgment of the Circuit Court of Randolph county, rendered on a policy of fire insurance on the 15th day of May, 1894, in favor of plaintiff, Coles, against the insurance company for the sum of eight hundred and thirty dollars and eighty seven cents.

The facts are as follows: The plaintiff, John Coles, was the owner and occupier of a "feed and provision" store, a one-story, frame building in the town of Elkins, and took

out this policy of insurance from the defendant, the Jefferson Insurance Company, through its agent, Ralph Darden, a member of the firm of Darden Bros., real estate agents, in that town, dated 4th day of February, 1892, for the sum of seven hundred and fifty dollars, two hundred and fifty dollars on the building and five hundred dollars on the stock of feed and provisions while contained therein. The property insured was totally destroyed by fire, originating no one knows how, on the night of the 25th of May, 1892. The insurance company refused to pay, and Coles sued in *assumpsit* on the policy, and the defendant filed four grounds of defense with its plea of *non-assumpsit:* "(1) The plaintiff made a false statement in his application in this, *viz.* in answer to the question, 'Is the property incumbered?' the plaintiff answered, 'No,' when in fact there was then a vendor's lien upon the property to a large amount, about three hundred and fifty dollars. (2) Plaintiff violated clause No. 5 against increase of risk, by using the premises for storing and vending therefrom various other articles named without the special consent in writing of the company. (3) Plaintiff violated his contract of insurance by taking additional insurance on the same property without the company's written consent indorsed on the policy. (4) That plaintiff did not within the time render a particular, sworn and signed account of the loss, as required and agreed to by the policy."

The plaintiff, by way of matter in waiver, estoppel, and confession and avoidance, replied: "(1) That the application of plaintiff was wholly written and prepared by the agent of defendant; that plaintiff distinctly stated to the agent that he owed the purchase money on the property according to a written contract with F. W. Brown, the vendor, which contract the agent was acquainted with and had read; and the agent said, as the purchase money was not due, it constituted no incumbrance, and wrote down the answer, 'None.' (2) Plaintiff admits adding a stock of farm implements, hardware, harness, roofing, sash, doors and goods of like kind, but the same did not increase the risk, and it was done with the full knowledge of the agent, and without objection on his part. (3) Plaintiff denies

that any additional insurance on the same property, or any part thereof, was in any manner taken so as to increase the risk. (4) Plaintiff says that the particular account of loss required by the policy was furnished, and all rights requiring additional statements for settlement, by arbitration or otherwise, before suit, were distinctly waived by a written notice to plaintiff from defendant, refusing in any manner to adjust the loss and denying all liability therefor."

The court gave the following instructions for the defendant: "Defendant's Instruction No. 1. If the jury believe, from the evidence, that the property insured, or a material portion thereof, was incumbered at the time the application in writing was made by the plaintiff to the defendant for the policy sued on, and that he denied in said application the fact of said incumbrance, and they further believe that in said application and policy the plaintiff warranted the truth of statements and answers made in said application, that then they shall find for the defendant company. Defendant's Instruction No. 2. If the jury believe, from the evidence, that the additional use of the store building for storing and vending farm implements and hardware; sash, doors, *etc.*, without the permission of the defendant company, increased the risk to it, then they shall find for the defendant." And the following for plaintiff: "Plaintiff's Instruction. If the jury believe, from the evidence, that at the time the application was made for the policy in controversy the agent who took said application wholly prepared and wrote the same, and that at the time the plaintiff informed him of the incumbrance upon said property, or that, prior to said time, said agent had full knowledge of said incumbrance, then and in that event the answer incorporated into said application, though incorrect in regard to said incumbrance, will afford no defense to said company to this action, in the absence of fraud on the part of plaintiff." To the giving of this one defendant excepted.

The main points in dispute were: Was Ralph Darden who took the policy the agent of defendant? If so, what kind, what was the extent of his authority, and what did

he do in the premises? The evidence shows that he wrote the application on a blank furnished him by the company, filled it up, and signed it as agent. The company received it from him thus signed, and issued the policy on it; and the application, by questions on the back directed to the agent, required him to ascertain and furnish certain independent information in answer to such questions. He was the acting member of the real-estate firm of Darden Bros., and lived at Elkins. His firm was the local agent of defendant during all the period from making out the application down to the fire, received the premium, and delivered the policy. He was certainly authorized to procure policies and forward applications, and to that extent at least, was recognized by the insurance company as its agent. See *Deitz* v. *Insurance Co.*, 31 W. Va. 851 (8 S. E. 616); 1 Biddle, Ins. §§ 114, 115. It is a settled principle, well settled by the authorities, that agents of an insurance company, authorized to procure applications for acceptance, must be deemed agents of the company in all they do in preparing the application, or in any representation they may make as to the character or effect of the statements therein contained; and when, either by his instruction or direct act, such agent makes out an application incorrectly, notwithstanding all the facts are correctly stated to him by the applicant, the error is chargeable to the company. This rule is not affected or changed by a stipulation, inserted in the policy subsequently issued, that the acts of such agent in making out the application shall be deemed the acts of the insured, unless written in the application or expressed in the policy. Such stipulation does not convert the acts done for the insurer into acts of the insured. And if, when an insurance company issues a policy, it knows certain facts which are material to the risk taken, it can not claim a forfeiture of the policy because of the existence of those facts, though the insured, in his answers to questions, may have stated that such facts did not exist. *Schwarzbach* v. *Union*, 25 W. Va. 622. See collation of points decided as to general agent, in Clement, Dig. Ins. p. 412, § 10. On subject of other insurance, see Id. p. 192, § 5.

The insurance agent, within the general scope of the

34

business he transacts, is *pro hac vice* the insurance company. What he knows, they know. What he does, they do. He has power to bind and to loose, and no limitation on his power unknown to strangers will bind them. *Insurance Co.* v. *Wilkinson*, 13 Wall. 222; *Muhleman* v. *Insurance Co.*, 6 W. Va. 508. See 2 Beach, Ins. § 1064 *et seq.* If, however, the insured employs an insurance broker to place insurance for him, he is the agent of the insured, and not the agent of the insurer. But if acting on behalf of the company, or of an agent of the company, the broker solicits the insurance, he is the agent of the company. The insurance agent, as thus distinguished from the broker, is ordinarily held to be a general agent of the company. *Miller* v. *Insurance Co.* (1869) 27 Iowa, 203. As such general agent, it is held that he may waive forfeitures and conditions in the policy, notwithstanding a provision therein that no agent has such power. Notice to him or knowledge by him is notice to or knowledge by the company, so as to prevent the latter from insisting upon a forfeiture for a breach of condition, of which breach the company thus had knowledge. That if facts regarding the risk are correctly stated to the agent, but erroneously inserted by the agent in the application, the company, and not the insured, is chargeable with the mistake; that he may consent to prior or subsequent insurance on the property; and that a provision in the application or policy making him the agent of the insured, and not of the company, can not change his legal status as agent of the company. See Mec. Ag. § 931, and cases cited in note; 1 May, Ins. c. 7, §§ 118, 120, 124a. The facts of the case must determine for whom the person was acting. The authority of an agent must be determined by the nature of his business, and is *prima facie* co-extensive with its requirements, and the question is not what power the agent did in fact possess but what power did the company hold him out to the public as possessing. On the subject of waiver, *etc*, see *Wheaton* v *Insurance Co.*, 76 Cal. 415 (18 Pac. 758, and 9 Am. St. Rep. 216, 229, 232, note); *Crittenden* v. *Insurance Co.*, 85 Iowa, 652, (52 N. W. 548, and 39 Am. St. Rep. 321, 326, note;) Rich. Ins. c. 8, pp. 86–102, §§ 90, 95. See *Messelback* v. *Norman* (1890) 122 N.

Y. 578 (26 N. E. 34); *Hart* v. *Insurance Co.*, (Wash.) 38 Pac. 213; *Steele* v. *Insurance Co.* (Mich.) 18 Lawy. Rep. Ann. 85, notes (53 N. W. 514); *Beebe* v. *Insurance Co.* (Mich.) 53 N. W. 818. See Clement, Dig. Ins. pp. 385, 255 *et seq.*

The evidence in this case shows that the real estate agents, the firm of Darden Bros. were agents of the Jefferson Insurance Company, furnished with blanks, exercising their agency within restricted limits as to place, but without restriction as to soliciting risks and making out and forwarding applications, receiving and delivering policies, except as to amount on one risk. The following questions were specially addressed by the company to their agents, and as such agents were answered and signed by Darden Bros.: "Is the insured reliable and of good moral character?" "Have the premises ever been on fire?" "Is the property mortgaged?" "If recently sold, at what price?" "Is there any danger of incendiarism?" "Do you fully recommend the risk?" "Please give any information relating to the risk we should know."

The plaintiff asked the acting partner, Ralph Darden, to take the risk of one thousand five hundred dollars but he replied that their company (the Jefferson) never took more than one thousand dollars on one risk, but that he would put half of it in the Peabody Insurance Company. He did make out an application on behalf of plaintiff to the Peabody Company, signing Mr. Coles' name to it, in which he stated there was no incumbrance, and that the property was insured in the Jefferson Insurance Company for seven hundred and fifty dollars. On the back of the application, at the close of questions addressed to agents, Darden Bros. add, "We should like you to place this risk with some good company for us at your earliest convenience." I infer, from Darden's evidence, that as to this company he only regarded himself as an insurance broker. See, as to waiver by agent, *Murphy* v. *Insurance Co.*, 62 Mo. App. 495. The fact of Darden's agency, the extent of his authority, what power in the premises did the insurance company hold him out to the public as possessing, what authority did the business at that distance from the home office seem to require—all these were questions for the jury, to be determined, under

the instruction of the court, from the facts of the case.

The instruction given for plaintiff, in connection with those given for defendant, states the law correctly. The Brown contract was properly admitted to go in evidence. It was the contract by which Brown sold the house and lot to plaintiff. It showed the balance of the purchase money still unpaid, for which Brown had a vendor's lien, and when it would be due; and the evidence shows that Darden read it or heard it read, and thereby knew the existence, nature, and amount of this incumbrance when he made out for plaintiff his application.

During the progress of the trial the court permitted the defendant to go fully into the character and quantity of the farming implements, *etc.*, which plaintiff added to his stock after the policy of insurance had been taken, to show anything likely to have increased the hazard from fire, but refused to permit defendant to enter into their value. I fail to see any injury that could result to defendant from the exclusion of such question. Upon increase of hazard, see cases cited in Clement, Dig. Ins. p. 224,

The evidence was not lacking on any essential point, and as a whole tended to make out the plaintiff's case. There was no error in overruling the motion of defendant for a new trial, and the judgment is affirmed.