# CHARLESTON.

WOOLPERT v. FRANKLIN INS. CO.

Submitted September 17, 1896—Decided Dec. 5, 1896.

1 INSURANCE—AGENTS AUTHORITY—WAIVER BY AGENT—PRIOR OR SUBSEQUENT INSURANCE.

An insurance agent authorized to solicit business for his company, and to issue policies, is, within the general scope of the business he transacts, *pro hœc vice* the insurance company. He may waive forfeitures and conditions in the policy, and may consent to prior or subsequent insurance on the property, although the policy issued by him contains a provision that such prior or subsequent insurance taken on the property will render the policy then issued void.

2. INSURANCE—SUBSEQUENT INSURANCE.

It is a general principle of law that in order to avoid a policy on account of subsequent insurance, against an express condition therein, it must appear that such subsequent insurance is valid, and can be enforced. If it can not be enforced, it is no breach of the condition of the prior policy.

GEO. BAYLOR and McDONALD & BECKWITH for plaintiff in error, cited 31 Gratt. 176; 41 W. Va. 261; 13 Wal. 223; 25 W. Va. 527, 624; 31 W. Va. 851; Sto. Con. (3d Ed.) § 830; 94 Mo. 353; 11 Am. & Eng. Enc. Law, 323, 336-7, 340.

FORREST W. BROWN and W. P. HUBBARD for defendant in error, cited 23 W. Va. 236; 24 W. Va. 361; 31 Gratt. 176; 16 Peters, 495; 16 Fed. Rep. 454 (note); 18 L. R. A. 496; 22 N. Y. 402; 4 Ben. F. I. Cas. 501; 86 N. Y. 414; 40 Am. Rep. 554; 115 N. Y. 279; 12 Am. St. Rep. 801; 51 Pa. St. 402, 408; 4 Bush. (Ky.) 242; 5 Bush. (Ky.) 652; 5 Ben. F. I. Cas. 241; 9 Ins. L. J. 657; 3 Ins. L. J. 525; 83

Ky. 7; 8 Lea, 531, 547; 19 Ins. L. J. 961; 42 Ga. 456; 30
La. Ann. 1368; 12 Ins. L. J. 381; 106 Ind. 513; 17 Ins. L.
J. 456; 62 N. W. Rep. 721; 59 N. W. Rep. 112; 5 Nev.
268; 3 L. R. A. 542; 13 Ins. L. J. 653; 33 Iowa, 325; 39
W. Va. 699, 701, 702; 2 May Ins. (3d Ed.) 365; 9 Cush.
470; 3 Ben. F. I. Cas. 470; 31 W. Va. 852; 25 W. Va.
624; 33 W. Va. 527; 41 W. Va. 261; 96 U. S. 544; 15
Ins. L. J. 503; 7 Ins. L. J. 169; 16 Ins. L. J. 65; 12 Ins.
L. J. 381.

ENGLISH, JUDGE:

This was an action of trespass on the case in *assumpsit*
brought in the Circuit Court of Jefferson county, by B. A.
Woolpert against the Franklin Insurance Company, a cor-
poration existing under the laws of the state of West Vir-
ginia to recover from the defendant the sum of eight hun-
dred dollars, with legal interest thereon from the 17th day
of February, 1892, which the plaintiff claims the defendant
owes him by virtue of a policy of insurance bearing date
on the 20th day of February, 1892, for loss in respect to
the property insured by said policy, caused by fire on or
about the 17th day of February, 1892, at Charlestown,
Jefferson county, W. Va. The policy of insurance upon
which this suit was predicated reads as follows:

"Policy of Insurance. No. 76,277. $800.00. By this
policy of insurance, the Franklin Insurance Company, at
Wheeling, West Va., in consideration of the receipt of six
dollars, and the representations, covenants, and warranties
of the assured hereinafter named, do insure B. A. Wool-
pert against loss or damage by fire, to the amount of eight
hundred dollars ($800.00) on stock merchandise, consisting
of dry goods, groceries, notions, tobacco, cigars, contained
in two story frame, tin-roof building on corner of Wash-
ington and Lawrence street, in Charlestown, Jefferson
county, West Virginia. And the said company hereby
agrees to make good unto the said assured, the executors,
administrators, and assigns, all such immediate loss or
damage, not exceeding in amount the sum or sums insured,
as above specified, nor the interest of the assured in the
property, except as herein provided, as shall happen by

fire to the property so specified from the 20th day of April, one thousand —— and 91, at twelve o'clock at noon, to the 20th day of April, one thousand eight hundred and 92, at twelve o'clock at noon, the amount of loss or damage to be estimated according to the actual cash value of the property at the time of the loss, making due allowances for depreciation by use or otherwise, and to be paid at their office in the city of Wheeling, W. Va. sixty days after due notice and proofs of the same shall have been made by the assured and received at said office, in accordance with the terms and provisions of this policy hereinafter mentioned, unless the property be replaced or the company shall have given notice of their intention to rebuild or repair the damaged premises.

"(1) If this insurance is procured upon an application, survey, plan, or description of the property herein insured, whether referred to or not in this policy, such application, survey or plan, or description shall be considered a part of this contract and a warranty by the assured; and any false representation by the assured of the condition, situation, or occupancy of the property; or any omission to make known every fact material to the risk, or an over valuation, or any misrepresentation whatever, either in a written application or otherwise; or if the assured shall have or shall hereafter make any other insurance on the property hereby insured, or any part thereof, without the consent of the company written hereon; or if the above mentioned premises shall be occupied or used so as to increase the risk, or become vacant or unoccupied without notice to and consent of this company in writing; or the risk be increased by the erection or occupation of neighboring buildings, or by any means whatever within the control of the assured, without the assent of this company indorsed hereon; or if it be a manufacturing establishment, running in whole or in part, over or extra time, or running at night; or if it shall cease to be operated without special agreement indorsed on this policy; or if the property insured, or any part thereof, shall be alienated by sale or otherwise; or if any part thereof shall be alienated by sale or otherwise; or if the property be sold or transferred, or any change take

place in the title or possession whether by legal process or judicial decree or voluntary transfer or conveyance; or if this policy shall be assigned before a loss without the consent of the company indorsed hereon; or if the interests of the assured in the property, whether as owner, trustee, consignee, factor, agent, mortgagee, lessee, or otherwise, be not truly stated in this policy; or if the assured shall keep gunpowder, fireworks, nitroglycerine, phosphorus, salt peter, nitrate of soda, petroleum, naptha, gasoline, benzine, bensole or benzine varnish, or keep or use camphene, spirit gas, or any burning fluid or chemical oils without written permission in this policy—then, and in every such case, this policy shall be void."

"(4) If the interest of the assured in the property be any other than the entire, unconditional, and sole ownership of the property, for the use and benefit of the assured, or if the building insured stands on leased ground, it must be so represented to the company, and so expressed in the written part of this policy; otherwise, the policy shall be void. When the property has been sold and delivered or otherwise disposed of, so that all interest or liability on the part of the assured herein named has ceased, this insurance on such property shall immediately terminate. Goods held on storage must be separately and specifically insured."

"(7) In case of any other insurance upon the property hereby insured, whether made prior or subsequent to the date of this policy, the assured shall be entitled to recover of this company no greater proportion of the loss sustained than the sum hereby insured bears to the whole amount insured thereon, without reference to the solvency or the liability of the insurers; and it is hereby declared and agreed that in case of the assured holding any other policy in this or any other company on the property insured, subject to the conditions of average, this policy shall be subject to average in like manner."

"(9) Persons sustaining loss or damage by fire shall forthwith give notice of said loss to the secretary of the company, and, within thirty days thereafter, render a particular account of such loss, signed and sworn to by them stating whether any and what other insurance has been made

on the same property, giving copies of the written portion of all policies thereon, also the actual cash value of the property and their interest therein, for what purpose and by whom the building insured or containing property insured, and the several parts thereof, were used at the time of the loss, when and how the fire originated, and shall also produce a certificate, under the hand and seal of a magistrate or notary public (nearest to the place of the fire, not concerned in the loss as a creditor or otherwise, nor related to the assured) stating that he has examined the circumstances attending the loss, knows the character and circumstances of the assured, and verily believes that the assured has without fraud sustained loss on the property insured, to the amount which such magistrate or notary public shall certify. The assured shall, if required, submit to an examination or examinations, under oath, by any person appointed by the company, and subscribe to such examinations when reduced to writing, and shall also produce their books of the account and other vouchers, and exhibit the same for examination at the office of the company, and permit extracts and copies thereof to be made. The assured shall also produce certified copies of all bills and invoices, the originals of which have been lost, and shall exhibit all the remains of the property which was covered by this policy, damaged or not damaged, for examination, to any person or persons named by the company. In case of loss on property held in trust or on commission, or if the interest of the assured be other than the entire and sole ownership, the names of the respective owners shall be set forth together with their respective interests therein. If this policy is made payable in case of loss to a third party, or held as collateral security, the proofs of loss shall be made by the party originally insured, unless there has been an actual sale of the property insured. All fraud or attempt at fraud, by false swearing or otherwise, shall cause a forfeiture of all claim on this company under this policy."

The defendant filed its plea under the statute, saying, in general terms, that it was not liable to the plaintiff, as in said declaration was alleged. The defendant also filed

several statements under the statute, marked, respectively, "1," "2," and "3," in the first of which it claimed that the action could not be maintained, because of the failure to perform and comply with and in violation of certain clauses, conditions, and warranties in the policy sued on; and the defendant specified, as to particular clauses, conditions, and warranties in respect to which such failure or violation is claimed to have occurred, the following: (1) "If the assured shall have, or shall hereafter make, any other insurance of the property hereby insured, or any part thereof, without the consent of the company written, then, and in every such case, this policy shall be void." Defendant states that the assured did afterwards make other insurance on the property insured in the policy declared on, *viz.* seven hundred dollars in the Manchester Fire Insurance Company, and five hundred dollars in the Northern Assurance Company of London, without the consent of the defendant written on its policy. (9) "All fraud or attempt at fraud, by false swearing or otherwise, shall cause a forfeiture of all claim on this company under this policy." Defendant states that by a statement in writing, sworn to by plaintiff, and furnished to defendant as and for a particular account of loss, plaintiff estimated his loss and the actual cash value of the property destroyed at two thousand and eight hundred dollars, although such value and loss did not, in fact, exceed one thousand dollars. Defendant further states that the obtaining of additional and excessive insurance as aforesaid was an attempt at fraud, and that a like attempt was made by plaintiff shortly before the fire, by applying for still more insurance, without notice to defendant, which insurance was not granted.

Statement No. 2. "*B. A. Woolpert, Plaintiff* v. *The Franklin Insurance Company of Wheeling, W. Va., Defendant.* The defendant files the following additional statement with his plea, specifying the particular clause, condition, or warranty in the policy contained in respect of which a failure or violation is claimed to have occurred. In the policy sued on, it is provided as follows: 'Statement: Persons sustaining loss or damage by fire shall forthwith give notice of said loss to the secretary of the company,

and, within thirty days thereafter, render a particular account of such loss, signed and sworn to by them, stating whether any and what other insurance has been made on the same property, giving copies of the written portion of all the policies thereon, also cash value of the property and their interest therein, for what purpose and by whom the building insured, or containing property insured, and the several parts thereof, were used at the time of the loss, when and how the fire originated, and shall also produce a certificate under the hand and seal of a magistrate or notary public (nearest to the place of the fire, not concerned in the loss as a creditor or otherwise, nor related to the assured) stating that he has examined the circumstances attending the loss, knows the character and circumstances of the assured, and verily believes that the assured had, without fraud, sustained loss on property insured to the amount which such magistrate or notary public shall certify. The assured shall, if required, submit to an examination or examinations under oath, by any person appointed by the company, and subscribe to such examination when reduced to writing, and shall also produce their books of account and other vouchers, and exhibit the same for examination at the office of the company, and permit extracts and copies to be made. The assured shall also produce certified copies of all bills and invoices, the originals of which have been lost, and shall exhibit all that remains of the property which was covered by the policy, damaged or not damaged, for examination, to any person or persons named by the company.' Defendant states that the said plaintiff failed to comply with the above provisions of the said policy sued on."

As to this statement it appears in evidence that proof of loss was furnished by the plaintiff to the insurance company, defendant, and no objection was ever made to the proof of loss by defendant, which must be regarded as a waiver of all objection.

Statement No. 3. "*B. A. Woolpert* v. *Franklin Insurance Company.* Statement No. 3. The defence in the above case being, with other things, that the action can not be maintained because of the failure to perform and comply,

with and the violations of certain clauses, conditions, and warranties in the policy sued on, the defendant here specifies as the particular clauses, conditions, and warranties in respect to which such failure or violation is claimed to have occurred: (Here insert section 1 of policy, and section 4). And as a further and more particular statement of plaintiff's failure to comply with and the violation of the above clauses, conditions, and warranties in said policy sued on, the defendant states the plaintiff, at the time defendant insured the property, was not the sole and unconditional owner of the property, but that he had executed a deed of trust of date March 20th, 1891, conveying the property covered by said insurance to J. Garland Hurst, trustee, to secure a note for $550.00 and any renewals thereof, which chattel mortgage or trust then existed and still exists, and is still unreleased, and because said plaintiff incumbered said property by deed of trust while said insurance was upon said property, without consent of defendant written on policy thereto."—Which statements were sworn to.

The plaintiff replied generally to defendant's plea, and joined issue with defendant, and plaintiff files with his plea the following statement, specifying matter upon which he relies and intends to rely in waiver, estoppel, confession, and avoidance of matter set up by defendant in his statement:

Statement. "(1) That, at the time said policy was procured, plaintiff informed defendant's agent, from whom he procured the policy sued on, that he desired and intended to take out additional insurance on the goods covered by said policy; that he asked defendant's agent to see that the policy was properly prepared; that defendant's agent promised to do so, and did prepare and deliver the policy sued on; that defendant's agent told plaintiff he could take out additional insurance on the goods covered by the policy sued on; acting on this permission, plaintiff took out a policy in the Manchester Fire Assurance Company for $700.00, and one in the Northern Assurance Company of London for $500.-00; that plaintiff is an unlettered man and can not read or write the English language, and he so informed the defend-

ant's agent, and told him that he relied on him to fix up matters correctly, that said policy was not read to plaintiff at the time of delivery, or at any time, and, at the time permission was given to plaintiff to take out additional insurance on the property covered by the policy sued on, it was not stated to plaintiff, nor did plaintiff know, that the policy required the permission to be written on the face of the policy, and the plaintiff was not aware that the policy contained the stipulations set out in defendant's statement until after his loss; that said stipulations were never mentioned to him, or read to him, and he never agreed to them."

"(2) That said proof of loss was, in the judgment of plaintiff, the fair cash value of said goods, and less than they had cost him."

Replication. "*B. A. Woolpert* v. *The Franklin Insurance Company.* The plaintiff replies generally to defendant's plea No. 2, and joins issue with defendant on said plea. The plaintiff files with his replication the following statement, upon which he relies, and intends to rely, in waiver, estoppel, confession, and avoidance of matter set up by defendant in his statement:

"Statement: That, within the time required by said condition of the said policy sued on, he furnished defendant with a statement in writing of the property destroyed, giving him the best description in his power of the said property, making it as fair and accurate as under the circumstances could be made, the books of said plaintiff having been destroyed by said fire; and that defendant accepted said statement and proof of loss, and made no objection thereto. B. A. Woolpert.

"Taken, sworn to and subscribed to by B. A. Woolpert before me, in open court, this 2d day of December, 1893. Jno. M. Daniel, Clerk."

Replication. "*Woolpert* v. *Franklin Insurance Company.* Plaintiff replies generally to defendant's plea, and files with his said replication the following statement, showing matter upon —— he relies, and intends to rely, in waiver, estoppel, confession, and avoidance of matters set up by defendant in his statement No. 3:

"Statement: That, at the time plaintiff procured from

the defendant the said policy sued on, no inquiry was made of him by defendant as to whether the property covered by said policy was incumbered by deed of trust or otherwise, and he made no statement in regard thereto, nor was he aware that it was necessary so to do, but he did not conceal the same, as the agent of the defendant prior to the taking out of the policy sued on wrote the deed of trust to J. Garland Hurst, trustee, mentioned in defendant's statement, took the acknowledgment thereof, and delivered the same for record in November, 1891, and, after same was recorded, withdrew said trust from the clerk's office, and delivered the same to the plaintiff; that, before and long after the said policy sued on was issued, the defendant was fully aware of said deed of trust; also, that said deed of trust on its face is void, and of no binding force."—Which statements and replication were properly sworn to, and filed.

On the 18th day of February, 1896, the case was submitted to a jury, which on the 19th resulted in a verdict in favor of the plaintiff for the sum of nine hundred and eighty dollars. A motion was made by the defendant in arrest of judgment, and for a new trial, which the court took time to consider, and on the 17th day of March sustained said motion, set aside the verdict, and awarded a new trial, and the plaintiff excepted, took several bills of exception, and obtained this writ of error.

It will be perceived that condition No. 1 of the policy, among other things, provides that if the property insured, or any part thereof, shall be alienated by sale or otherwise, or if property be sold or transferred, or any change take place in the title or possession, whether by legal process or judicial decree or voluntary transfer or conveyance, or if the interest of the assured in the property, whether as owner, trustee, consignee, factor, agent, mortgagee, lessee, or otherwise, be not properly stated in the policy, in every such case the policy shall be void. And in condition 4 it is provided that "if the interest of the assured in the property be any other than the entire, unconditional, and sole ownership of the property for the use and benefit of the assured, it must be so represented to the company, and so expressed in the written part of the pol-

icy; otherwise, the policy shall be void;" and, while it appears that a deed of trust had been executed by the plaintiff on his property, yet it appears that the agent of the insurance company drew the trust deed, took its acknowledgment, and it was possibly delivered for record by him, so that the agent of the insurance company had full notice of the trust deed at the time the policy of insurance was issued. See May, Ins. § 294b, where it is said: "But here, as in other cases of defective or untrue statements, knowledge of the untruth at the time of the issue of the policy is a waiver of the right to avoid the policy therefor." And in 11 Am. & Eng. Enc. Law, 336, it is said: "If the insurers, with full knowledge of facts which would avoid the policy, nevertheless execute and deliver it, or if, after its delivery, they acquire knowledge of such facts, and subsequently treat it as valid and binding by any acts, words, or conduct which might reasonably lead the insured to suppose himself to be still insured, they will have waived the defect, and be estopped to assert it." *Schwarzbach* v. *Protective Union*, 25 W. Va. 624. This point, however, is not insisted upon in argument by counsel for the defendant in error, and must be regarded as conceded to be in favor of the plaintiff in error.

It is, however, earnestly insisted by the defendant in error, that, the plaintiff in error having taken policies of insurance in other companies subsequent to the time of obtaining the policy from the defendant in error, without the consent of the defendant in error written on the policy, in compliance with the first condition of the policy, the said policy should be void. It is, however, contended by the plaintiff in error that, while it is true that he attempted to take out policies of insurance in two other companies subsequent to the time of obtaining his policy from the defendant, they were void; and, further, that these subsequent policies were taken or attempted to be taken by the plaintiff in error with the knowledge and consent of the agent of the defendant in error, and for that reason the policy obtained from the defendant in error was not rendered void thereby. It appears to be conceded that the policies taken by the plaintiff in error subsequent to the policy taken out from the defendant in error were void and invalid, and the

plaintiff in error insists that, in order that the policy sued on should be rendered invalid under the clause above mentioned, the additional policies of insurance taken out must be valid, and the fact that the plaintiff in error attempted to effect other insurance upon the same property, which was invalid by reason of a similar clause or condition in its policy, would not avoid the policy sued on; citing *Southerland* v. *Insurance Co.*, 31 Gratt. 176, which was a decision in which Judges Anderson, Moncure, and Staples held in accordance with the syllabus of the case, and Judges Christian and Burks dissented. The syllabus in that case reads as follows: "(1) S. obtains from the O. D. Ins. Co. a policy of insurance on his storehouse and stock of goods, one condition of which policy is that there shall be no other insurance on the property without the consent of the company indorsed on its policy. Afterwards S., without the consent of the O. D. Ins. Co., and, in fact, in ignorance that there was such a condition in its policy, obtains from the C. Ins. Co. another policy of insurance upon the same storehouse and stock of goods, and in this policy there is a condition that there is no previous policy of insurance upon the property. The property having been consumed by fire, in an action by S. against the O. D. Ins. Co. upon its policy of insurance, held: *First*. The condition in the first policy that, if other insurance should be effected without the consent of the company, the policy should be void, related only to other valid insurance; and the fact that S. attempted to effect a second insurance with the C. Co., which was invalid by reason of the condition of its policy, does not avoid the first policy, and the O. D. Ins. Co. is liable on its policy. *Second*. The second policy must at the time of the loss, be inoperative, so that his action can be maintained upon it; but it is not necessary that it should be absolutely void. It is sufficient if it is voidable."

It is a general principle of law that, in order to avoid a policy on account of a subsequent insurance against an express condition therein, it must appear that such subsequent insurance is valid, and can be enforced. If it can not be enforced, it is no breach of the condition of the prior policy. In that case the authorities seem to have been collated by Judge An-

derson, on the one hand, and Judge Christian, on the other, the majority of the court holding with the syllabus, above quoted, and, as we think, correctly. They quote from Wood, Ins. p. 586, § 348, as follows: "A condition that, if other insurance shall be obtained without the consent of the company, the policy shall be void, only relates to other valid insurance, and the policy is not avoided by the procurement of other policies that for any cause are invalid;" citing *Thomas* v. *Insurance Co.*, 119 Mass. 121, where it is held: "A policy of insurance against fire which contains a provision that if the assured 'shall have made, or shall hereafter make, any other insurance upon said property without the knowledge or consent of this company, in writing, then, in such case, this policy shall be void,' is not defeated by the taking of a subsequent policy, which is invalid by reason of the failure of the assured to obtain the assent of the company issuing it to the existence of other insurance upon the property, as required by the terms of that policy; and the assured may set up the invalidity of the second policy in action by him upon the first policy, although he has received payment of the second policy from the insurer;" citing *Jackson* v. *Insurance Co.*, 23 Pick. 418; *Clark* v. *Insurance Co.*, 6 Cush. 342; *Hardy* v. *Insurance Co.*, 4 Allen, 217, and many others.

During the progress of the trial, the plaintiff asked several instructions to be given by the court to the jury, and among them were the following: "Instruction No. 4. The court instructs the jury that if they believe from the evidence that, when the plaintiff applied to the agent of the defendant for the policy of insurance sued on, the agent of the defendant told him he could take out additional insurance in other companies, and plaintiff, in pursuance of such permission, did afterwards take out the policies in the Manchester Fire Insurance Company and the Northern Insurance Company, then the omission or failure of said agent or defendant to indorse the said permission or the assent of the defendant company on the policy sued on will not avoid said policy." Instruction No. 5, is in the words and figures following: "Instruction No. 5. The court instructs the jury that although they be-

lieve from the evidence that, according to the contract contained in the policy sued on, the plaintiff was inhibited from taking out the policies in the Manchester Fire Insurance Company and the Northern Insurance Company without the consent of the defendant indorsed on the policy sued on, yet if they further find that said policies in the Manchester Fire Insurance Company and the Northern Insurance Company contain a clause in the contract in said policies forfeiting or avoiding said policies if plaintiff failed to give notice to said companies, or of either prior or subsequent policies of insurance on said property described in the policy sued on, and said plaintiff did effect either prior or subsequent insurance on the property set out in the policy sued on, and failed to give notice thereof to said companies, and have their assent indorsed on said policies of the Manchester Fire Insurance Company and the Northern Insurance Company, then the said subsequent insurance policies will not avoid the policy sued on." Instruction No. 8 is in the words and figures following: "Instruction No. 8. The court instructs the jury that if they believe from the evidence that plaintiff could not read or write the English language, and he so informed the agent of the defendant when he made application for policy sued on, and that the defendant's agent then informed plaintiff that he could take out additional insurance in other companies, and did not inform him that the assent of the company to such additional insurance must be indorsed on the policy sued on, and did not read said policy to him, and said agent failed to indorse such assent on the policy, then the failure of plaintiff to give notice to the defendant of subsequent insurance, and have the assent of the defendant indorsed on the policy sued on, will not forfeit or avoid said policy." To the granting of which instructions the defendant objected, and the court sustained the objections, and refused to give the instructions, to which ruling of the court the plaintiff excepted, and prays that this his bill of exceptions may be signed, sealed, and made a part of the record, which is accordingly done. And the court gave the jury the following instruction, marked No. 12, at the instance of the de-

fendant: "Defendant's instruction.  The court instructs the jury, if they believe from the evidence that the plaintiff, B. A. Woolpert, commenced the mercantile business in the town of Charlestown in the month of April, 1891, and went to Baltimore during said month, and purchased his goods; and after some of the goods so purchased had arrived at his storeroom in Charlestown, and the invoice of other goods had been received, which had not arrived, that David Howell, an agent of the defendant, applied to the plaintiff to take a policy of insurance on said goods; and that after an inspection of the goods which——arrived, and an inspection of the invoices which had been received, it was agreed between the plaintiff and the said agent Howell that the policy sued on for $800.00 should be issued; and that the said plaintiff then and there stated to the said agent that he was going to get in more goods, and would want to take another policy out, and was told by said agent 'that you will have to take it with some one else,' and the next day the said policy of insurance sued on was issued and delivered to the plaintiff—then if the jury further find that subsequently, without the knowledge or consent of the defendant or its agent, the said plaintiff—— 20th day of August, 1891, obtained from the Manchester Fire Assurance Company a policy for $700.00 on the same stock of goods, or a material part thereof, and on the 2d day of January, 1892, without the knowledge or consent of the defendant or its agent, and without other notice to defendant or its agent, procured a further policy of insurance in the Northern Assurance Company of London for $500.00 on the same stock of goods, or a material part thereof, then that either or both of said subsequent policies of insurance will avoid the policy sued on, and they must find for the defendant."  To the granting of which instruction the plaintiff objected, which objection was overruled, and the instruction was given as asked for, and the plaintiff excepted.

Now, can we sanction the action of the trial court in rejecting the above stated instructions, asked for by the plaintiff, and in giving the last named instruction, asked for by the defendant?  I think not.  In considering

instruction No. 4, prayed for by the plaintiff, and refused by the court, it must be borne in mind that the evidence shows that the plaintiff was an unlettered man, and could neither read or write. Mr. Howell appears to have been to some extent his legal adviser. He had prepared the deed of trust for him, taken the acknowledgment, and, he thinks, delivered it for record; and it was natural he should go to him when he wanted his property insured, and, rely upon his statements; and, when told by said Howell, if he wanted additional insurance upon his property, that he would have to take it with some one else—that is, with the agent of some other company—without informing him that such action would render void the policy he was writing up for him, by reason of a condition on its face, said Howell, as the agent of the defendant, thereby waived the condition that the policy issued by him would be void if he took additional insurance in another company.

In the case of *Coles* v. *Insurance Co.* (decided by this court, Nov. 23, 1895) 41 W. Va. 261 (23 S. E. 732) it was held that the jury, under the instruction of the court, must determine from the facts of the case the existence, nature, and extent of the power and authority of the agent of the insurance company. If a general agency exists, it is *prima facie* co-extensive with the requirements of the business at the given time and place. Such general agent may waive forfeitures and conditions in the policy, notwithstanding a provision therein that no agent has such power. So, in the case of *Insurance Co.* v. *Wilkinson*, 13 Wall. 222, it was held that "insurance companies who do business at a distance from their principal place of business are responsible for the acts of the agent within the general scope of the business intrusted to his care, and no limitation of his authority will be binding on parties with whom he deals which are not brought to their knowledge." See, also *Deitz* v. *Insurance Co.* 31 W. Va. 851 (8 S. E. 616) as to powers of agent authorized to procure policies. In the case of *Coles* v. *Insurance Co. supra*, HOLT, PRESIDENT, delivering the opinion of the Court, says: "The insurance agent, as thus distinguished from the broker, is ordinarily held to be a general agent of the company. *Miller* v. *In-*

*surance Co.* 27 Iowa, 203. As such general agent, it is held that he may waive forfeitures and conditions in the policy, notwithstanding a provision therein that no agent has such power; * * * that he may consent to prior or subsequent insurance on the property," *etc.* For these reasons, and in accordance with the principles of law above quoted, I think the court erred in refusing to give said instruction No. 4; and, it being conceded that the subsequent policies taken out by the plaintiff were void, said instruction No. 5 should have been given to the jury; and instruction No. 8 should have been given, for the reasons above stated with reference to instruction No. 4; and, for the same reason, instruction No. 12 should not have been given, as prayed for by the defendant. My conclusion is, from a review of the whole case, that the trial court erred in setting aside the verdict of the jury, and awarding a new trial.

The judgment of the circuit court is reversed, and this Court, proceeding to render such judgment as should have been rendered, enters judgment upon the verdict of the jury, with costs, *etc.*