# WHEELING.

## MAUPIN v. INSURANCE COMPANY.

Submitted January 26, 1903.     Decided June 6, 1903.

| | |
|---|---|
| 53 | 557 |
| e55 | 275 |
| 55 | 351 |
| q55 | 369 |
| e55 | 370 |
| 55 | 372 |

| | |
|---|---|
| 53 | 557 |
| e 59 | 313 |
| 59 | 314 |
| 59 | 439 |
| 59 | 440 |
| 59 | 443 |
| 59 | 447 |
| 59 | 448 |

| | |
|---|---|
| 53 | 557 |
| f64 | 658 |
| 65 | 179 |
| f65 | 271 |

| | |
|---|---|
| 53 | 557 |
| 66 | 272 |

1.  PLEAS.

    Pleas in abatement and bar may be filed at the same time. The pleas in abatement should be first tried; but if the party filing them goes to trial on the merits under the pleas in bar, without asking a trial on the pleas in abatement, he waives such pleas. (p. 558).

2.  FIRE INSURANCE.

    A clause in a fire insurance policy called the "Iron Safe Clause," that the insured make an inventory of his stock of goods and keep books correctly detailing purchases and cash and credit sales and keep them in an iron safe, or away from the store building when closed for business, is reasonable and valid. It is a promissory warranty. (p. 559).

3.  FIRE INSURANCE—*Oral Evidence.*

    In such "Iron Safe Clause" is a provision that non-compliance with it by the insured, shall forfeit the policy, and that 'agents of this company have no authority to waive these conditions"; no oral evidence is admissible of an oral waiver of such clause by a soliciting agent of the company before or at the time of the issuance of the policy. (p. 565).

4.  ORAL EVIDENCE—*Contracts.*

    It is a fundamental rule in courts of law and equity that oral evidence of prior or contemporaneous oral agreement or conversation can not be received to vary or contradict a

valid written contract, unless in cases of fraud or mutual mistake. This rule applies to policies of fire insurance. (p. 567).

5.  DEMURRER.

   If a defendant, giving no evidence, moves the court to exclude the plaintiff's evidence as not sufficient to warrant a verdict for plaintiff, or to direct a verdict for him, and his motion is overruled and this Court reverses the judgment for that cause, it will not remand the cause for another trial, but will enter judgment for the defendant, or, as it chooses, direct the circuit court to do so, unless satisfied that it will work injustice. (p. 567).

6.  NEW TRIAL—*Judgment.*

   If the Supreme Court holds that a verdict for the plaintiff is without sufficient evidence, or contrary to the evidence, and reverses the judgment for that cause, will it grant a new trial or enter judgment for defendant? (p. 568).

Appeal from Circuit Court, Mason County.

Action by C. W. Maupin against the Scottish Union and National Insurance Company. Judgment for plaintiff, and defendant appeals.

*Petition Refused.*

RANKIN WILEY, for plaintiff.

CHARLES E. HOGG and H. R. HOWARD, for defendant

BRANNON, JUDGE:

C. W. Maupin sued the Scottish Union and National Insurance Company in the circuit court of Mason County, and recovered upon the verdict of a jury a judgment for $2,340, from which the company sued out a writ of error from this Court.

The defendant filed a plea in abatement of another suit pending. The trial upon the merits under other pleas was had as if in ignorance of that plea in the case; no trial was had upon it in advance of the main trial, and this is assigned as error. The Code, chapter 125, section 21, gives leave, as a change from common law pleading, to plead in abatement and bar at the same time, but requires that the issue on the plea in abatement be first tried, because that may alone end the case. Though a plea in bar to the merits is, at common

law, a waiver of a plea in abatement, it is not under that statute. But the defendant put in that plea. He had right to insist upon its trial or waive it. He ought to have brought it to trial, and by not doing so, and going to trial on the merit pleas, it waived the plea in abatement. 1 Cyc. 136; 1 Ency. Pl. & Prac. 33.

The policy contained what is called the "Iron Safe Clause" reading: "It is expressly stipulated, that the assured shall, before this policy shall take effect (provided no inventory has been taken within six months,) make an inventory of the stock to be covered hereby, and shall keep books of account correctly detailing purchases and sales of said stock, from and after date of said inventory, both for cash and credit; and shall keep said inventory and books securely locked in an iron safe, or away from the building containing property hereby insured, during the hours that such store is closed for business. Failure to observe these conditions shall work an absolute forfeiture of all claims under this policy. This policy is void if there are any Terra Cotta flues in the building. Agents of this company have no authority to waive these conditions."

The following is also in the policy: "This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements or conditions as may be endorsed hereon or added hereto, and no officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement endorsed hereon or added hereto, and as to such provisions and conditions no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurer under this policy exist or be claimed by the insurer unless so written or attached."

The defendant filed pleas averring that Maupin did not comply with the demands of the "Iron Safe Clause," as he failed to make an inventory, or keep the books of purchases and sales as required by it, and did not keep the books in an iron safe, or away from the building containing the stock

of goods insured, when closed for business, and that they were consumed by its destruction by fire, and not in a safe, and were not open to the examination of the company after the fire.

The plaintiff filed replications to said pleas stating that the company had waived compliance with said clause; and under these replications gave oral evidence to the effect that a local agent prepared and mailed the policy to him; that upon its receipt he went to the local agent of the company and told him that he would not have the policy with that clause in it, that he could not live up to it, and that he had no safe in his store, and that he kept only a book of debit and credit with customers, and that he did not keep books showing purchases made by him of goods, and detailed lists of cash and credit sales,; and that then this agent told him that he could invoice once a year, and that it would be "all right"—in short, as claimed, dispensed with compliance with that clause, and that with this understanding he, Maupin, accepted the policy. To this evidence of waiver the defendant objected.

It is not necessary to use much space to show that such a clause is valid and binding. It provides for the business record of the doings in the store in regular course of business as means by which the company can examine the extent of the loss and its liability, the best, generally the sole means of its ascertainment, and it provides for the security of these documents by means of an iron safe, or being away from the store building when closed for business. The covenants contained in the clause are promissory warranties in the law of insurance. Warranties are of two kinds, affirmative and promissory. Affirmative consist of representation in the policy of facts; promissory are those that require that something shall be, or shall not be, done after the policy takes effect. If the affirmative warranty is false, it avoids the contract; and if a promissory warranty is not complied with, it avoids the policy. 15 Am. & Eng. Ency. L. (2 ed) 919, 920; May on Ins. section 157. The particular clause in question is a promissory warranty. *Scottish Union* v. *Stubbs,* 98 Ga. 754, (20 S. E. 180) ; *Goldman* v. *North British,* 48 La. Ann. 223.

The decisive question is whether the oral waiver of the agent dispensed with the clause. Here is a written contract free from ambiguity requiring no evidence to impart its mean-

ing. It says that certain things shall be done. Oral evidence is used to make another contract; to prove that the things which it says shall and must be done were not in the policy as it was in fact to be done—a flat contradiction.. Evidence of the conversation, the interlocution, at the time of the contract to contradict what the writing stipulates as to the escence of the contract; to make it say the opposite of what it does say. This Court condemned that doctrine in *Crislip* v. *Cain,* 19 W. Va. 438 and *Knowlton* v. *Campbell,* 48 *Id.* 294. Where is safety to be found, if the written testimony of the solemn actions of men can thus be annulled? Unstable, frail memory, wilful purjury, will thus dominate. "When parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagements, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing; and all oral testimony of a previous *collequium,* between them, or of conversations or declarations at the time when it was completed, or afterwards, as it would tend in many instances to substitute a new and different contract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties, is rejected." 1 Grenl. section 275. "It is a fundamental rule in both courts of law and equity, that parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid instrument, unless in cases where the contracts are vitiated by fraud or mutual mistake." *Northern Insurance Co.* v. *Grand View, etc.,* 183 U. S. 308. That case applies this rule to insurance policies just the same as to other written instruments. So does *Insurance Company* v. *Board,* 49 W. Va. 360. The evidence admitted in this case was inadmissible. I place the reversal of the judgment in this case on two grounds, the first, that oral evidence to change, to deny the letter of the contract, is incompetent to do so.

The second objection to the action of the circuit court is, that this oral evidence to prove a waiver of the clause of the policy in question was not admissible, because the agent had no power to make such a waiver. The very words of the clause say that non-compliance with it "shall work an absolute forfeiture of all claims under this policy. * * * Agents of

this company have no authority to waive these conditions."
In another clause, if it allowed such 'waiver, but does not, the
waiver must be in writing on the policy.  Upon this subject
of the power of the agents to waive conditions imposing on
the party insured duties proper to the protection of the insur-
ing company, there is a world of decisions, and they are a
wilderness of conflicting cases, and to attempt anything like
a review of them in detail would be only to grope and wander
in that wilderness, and in the end lead to bewilderment.  Still,
for every day use it is highly important that there should be
fixed, settled principle in this material matter, a principle giv-
ing some light and guidance.  The Supreme Court of the
United States, seeing the confusion and variance of decision
touching the subject, in 1902, considered that subject in an
elaborate discussion, reviewing the most apt, pertinent and
forcible authorities in England and Canada, those of the great
commercial states of the Uuion, and of the Supreme Court of
the United States, with the evident purpose to bring order
out of chaos and set some reliable line.  I am disposed to
yield to that court upon this subject controling persuasive
authority.  True, its judges are only men, subject to error of
judgment, as are we; but it is the highest court in the land,
and in the maze of decisions from so many states, it is better
to be in accord with it upon certain subjects, such as com-
mercial law, negotiable paper, fellow servancy, fire and life
insurance.  These subjects are common to all the states, and
there should fe uniformity of decision, as far as is possible, to
avoid disharmony and uncertainty as to the law.  This cannot '
be done by following state decisions.  As to local state law,
as to title to land, state constitutions and statutes, purely
state law, these remarks do not apply.  The case referred to is
*Northern Assurance Company* v. *Grand View Building Associa-
tion,* 183 U. S. 308.  It says that it is competent and reason-
able for insurance companies to make it matter of condition in
their policies that their agents shall not be deemed to have
authority to alter or contradict the express terms of the poli-
cies as executed and delivered."  "Where waiver relied on is
the act of the agent, it must be shown either that the agent had
express authority from the company to make the waiver, or
that the company, subsequently, with knowledge of the facts,

ratified the action of the agent." In the present case not only was no authority shown in the agent to annul conditions absolutely necessary for the protection of the company, but the policy, in two clauses, in plain words denied such authority and told Maupin that the agent had no such authority, and he read this warning, as he himself says. And if the agent had power to dispense with the condition in question, Maupin did not take the precaution to have the agent endorse on the policy, or give in writing, a waiver of the requirement, and the agent squarely denies such waiver, and it is supported by only the evidence of Maupin, a deeply interested witness; whereas the agent seems disinterested, as he had tendered his resignation before this policy was signed. Maupin must have known of this, as he paid the premium to the new agent; but did not mention this condition to him. Whilst we sympathize with Maupin in his loss, we must say that it is imputable to his own rashness in an important matter, and we cannot overturn sound law to relieve him. Recurring to the decission of the Supreme Court we find the Court saying: "Coming to the decisions of our state courts, we find that, while there is some contrariety of decisions, the decided weight of authority is to the effect that a policy of insurance in writing cannot be changed or altered by parrol evidence of what was said prior to, or at the time insurance was effected; that a condition contained in the policy cannot be waived by an agent, unless he has express authority to do so; and then only in the mode prescribed in the policy."

As this claimed waiver occurred when Maupin, after reading the condition, brought it to the agent to express his dassatisfaction and the waiver was then made before acceptance of the policy, it occurred to me that this waiver might be deemed as part of the contract, made at the time of issue, and would be different from the waiver after issue of the policy, and that at its issue the agent knew that Maupin had no safe, and did not design to have, and knew of his mode of keeping books. But here we meet the doctrine that to qualify the policy we must make it say what it does not, or worse, to put it correctly, make it say just the reverse of what it does say, by oral evidence, and thus do away with the writing; and, second, we do this by allowing an agent to exercise a power

denied him by the contract. It was an invariable rule of the company to put the "Iron Safe Clause" in policies for stores, and the agent was bound to do it, and it is found in this policy. Maupin so accepted it. In the case cited the policy provided that it should be "void, unless otherwise provided by agreement endorsed hereon, or added hereto, if the insured now has or shall hereafter make any other contract of insurance." The agent knew there was then another policy on the property. The court held the fact unavailing to affect the policy. The agent had no power to waive by oral agreement, if he had not at the time known of the existing policy or consent afterwards to the taking afterwards of another policy, and how could his mere knowledge of an existing one work that result? To say that when an agent is forbidden power to dispense with specific provisions as to security of books, material to be preserved as evidence of the amount of loss, he can yet by mere knowledge that the insured party had no safe, and does not design to have, and knows of the manner of keeping books, dispense with such requirement, denies the letter of agreement, defeats the usage and intent of the insuring party, and makes for it a contract which it never made or knew of.

It can say: "We made no such policy. It fails of effect as no policy, but you are to blame. We told you, and you knew that our agent had no such power. You rested upon it, but did so at your own risk." Suppose we say that Rayburn was a general agent. I do not think he could waive, because forbidden on the face of the policy, "and it has been held that a general agent may not by his acts and representations at the time of effecting the contract of insurance waive conditions in the policy relating to future action." "By a number of authorities it has been held that a soliciting agent may not, at or before issuance of the policy, waive conditions in the policy relating to future acts or defaults, on the ground that all verbal arrangements at that time are merged in the written agreement." 16 Am. & Eng. Ency. L. 943-4. The case of *Germania Ins. Co.* v. *Bromwell*, 62 Ark. 43, is exactly in point to this case. It holds: "A provision in an insurance policy requiring the assured to keep a set of books, showing the changes taking place from time to time in the stock of goods in an iron safe or other secure place is reasonable and valid.

A provision in a policy of insurance requiring that assured shall keep a set of books cannot be contradicted by parol evidence, that, before the policy was issued, the company's agent told the assured that it was unnecessary to keep such books. A stipulation in a policy that the assured shall keep a set of books is not waived by a statement to the insured by the agent before the policy was issued that it is unnecessary to keep such books." Such a safe clause was held valid, and "knowledge on the part of the company's soliciting agent at the time the policy is issued that the insured does not intend to comply with the condition requiring him to keep a set of books, and to take and preserve an inventory, to be produced in case of loss, does not estop the company from setting up the insured's non-compliance with it as a defense." *Summers* v. *Mutual Fire Ins. Co.,* 85 N. W. 763; *Fire Asso.* v. *Masterson,* 61 S. W. 962.

Do our cases conflict with this holding? In *Wolpert* v. *Franklin Ins. Co.,* 42 W. Va. 647, there would seem to be doctrine contrary at first view. The syllabus is broad in holding general power, in general language, in an agent to waive forfeitures and conditions. That was a case relating to his power to consent to other insurance. It did not involve the "Iron Safe Clause"; nor did the policy prohibit the agent from dispensing with the conditions. This is vital. The case is not authority for the plaintiff. In *Cole* v. *Jefferson Ins. Co.,* 41 W. Va. 261, we find a very broad proposition that "a general agent may waive forfeiture and conditions notwithstanding a provision that no agent has such power"; yet in the opinion it is said "no limitation on his powers unknown to strangers, will bind them." In this cause Maupin knew the agent had no power to waive. *Ins. Co.* v. *Wilkinson,* 13 Wall. 222, is cited, but there was no limitation on the agent's power in it. A volume of authority exists to show that where an agent's power is limited in the policy he cannot go beyond it.

The case does not seem to have been well considered. And reflect, again, that one dealing with an agent must, at his peril, look to his authority. He cannot do a thing prohibited.

But there is another feature of this case deciding it against the plaintiff. Though he did not keep an iron safe and the store books in it, yet if he had kept such books as the policies

required, and had removed them from the store room to a safe place, the clause would not debar recovery. But what are the facts? The fire was at two o'clock at night. The books, all of them, remaining in the store room on a shelf unsecured. Six out of eight destroyed in the fire. Of the two books left, day books, one containing an inventory admitted to be incomplete; the other articles sold on credit, no cash sales. The six destroyed were of recent business. Such books as they were gone. Some bills of purchase gone. One invoice presented made in April, 1898, the fire 23rd January, 1899. A second invoice made in October and partly entered in one of the day books, and the slips showing the remainder of it burnt. The company's adjuster came, but had nothing to go by. How could justice be done under these facts? There is no pretence or claim that the agent, in his denied conversation with Maupin, ever excused him from removing those books to a place of safety from the store at night. He kept them there contrary to the policy and without any leave from any person, and they were consumed. It is not only admitted, but found by the jury in answer to a special question, that Maupin did not comply with said clause of the policy, but was excused therefrom by the agent. How was he excused from taking the books, such as they were, from the store room, if he had no safe? Where was the evidence to prove the waiver of that? He could easily have kept this promise. There was no right or reason for claiming exemption from it. Plain justice required him to comply with it.

The court erred in refusing defendant's instruction 9. "The jury are further instructed that when parties have made a written agreement, the writing is regarded as the exclusive evidence of the contract, and all oral negotiations and stipulations preceding or accompanying the execution of the written agreement are merged in it, and are not admissible in evidence, and all such oral negotiations and stipulations should not be considered by you to contradict or vary the written policy in this case." Also instruction 10 should have been given that any waiver of the "Iron Safe Clause" must be endorsed on the policy or attached to it, and that a parol waiver was incompetent. The court should have directed a verdict for the

defendant, and should have set aside the verdict and granted a new trial.

We grant that insurance companies should be, and generally are, held to account where courts can see their way to impose liability with justice to them; but not where they cannot do so with justice owing to the fault of the other party. These companies are allowed to make their contracts, and insert clauses calculated to protect them from fraud and unjust and destructive liability. They are all important insti tutions to all, and as was said by the Supreme Court way back in *Carpenters* v. *The Providence Co.,* 16 Peters 495, and repeated in *Northern Assurance Co.* v. *Building Asso.,* cited, "The public have an interest in maintaining the validity of clauses in a policy of insurance against fire. They have a tendency to keep premiums down to the lowest rates, and to uphold institutions of this sort, so essential to the present state of the country for the protection of the vast interests embarked in manufactures and on consignments of goods in warehouses." They protect our homes and property. We must not bankrupt and blot them out by demolishing fair provisions to protect them against fraud and injustice. Deny this right, and, you deny the right of contract for self-preservation.

When the plaintiff concluded his case, the defendant moved the court to exclude the plaintiff's evidence as not sufficient to authorize a verdict for the plaintiff, and to direct the jury to find a verdict for the defendant; but the court refused. The defendant gave no evidence. . What shall this Court do? Shall it simply reverse the judgment, set aside the verdict and direct a new trial? Had the court sustained the motion, we could not reverse, because the evidence being insufficient for recovery by the plaintiff, such action would be warranted by law. *Ketterman* v. *Railroad,* 48 W. Va. 606. In that case is discussed the practice, not formerly followed, but now followed generally, of directing a verdict, and the cases there cited hold that when the evidence is so clearly deficient as to give no support to the verdict for the plaintiff, if rendered, the court should exclude the evidence, and direct a verdict, and it is error to refuse to do so. If the court had sustained the motion, the case would have ended in final judgment for defendant, and so it must be our judgment, as we must render

such judgment as the circuit court ought to have entered.
This motion is in no wise different from a demurrer to evidence, and upon that final judgment is always given. The
plaintiff so submitted his case. The adverse party is compelled
to join in a demurrer, and when a party moves for a verdict
he does the same as demur. When there is a special verdict
or finding of facts, final judgment is given on reversal, or a
mandate is directed to the lower court to do so. *Fort Scott
v. Hickman,* 112 U. S. 150, 165. When the court tries the
case in place of a jury, and the evidence is plainly insufficient
to sustain the judgment, the case is reversed and final judgment given for the defendant. *State v. Miller,* 26 W. Va. 107,
110; *State v. Seabright,* 15 *Id.* 590. How when the verdict
is general, and there is no motion to exclude, or to direct a
verdict, but the appellate court, on reviewing a motion for
a new trial overruled, on the ground that the verdict is contrary to, or without sufficient evidence so finds? During service on the bench of this Court I have seen verdicts set aside
for want of evidence in many instances where it was plain that
if the decision of this Court were observed, there would certainly be no verdict for the plaintiff, and it was plain that
the case could not be bettered, and the question arose in my
mind, why remand for a new trial? The practice has been to
remand always under the idea that it was the infallible rule.
That is a mistake. In that very late valuable work, Cyclopedia
of Law and Procedure, vol. 3, 450, 452, 454, these points are
fully discussed. Even in the case of a general verdict, if the
appellate court finds no cause of action, it gives final judgment or directs the lower court to do so. And when even the
verdict is contrary to evidence, or it is plainly not supported
by the evidence, or there is no dispute as to facts, or it is plain
that a new trial would serve no useful purpose, there should
be final judgment in the interest of an end of litigation. It
is in the sound discretion to enter or direct final judgment or award a new trial. An important question, however,
may arise in the exercise of this discretion. It is laid down in
New York that "extreme caution should be exercised in refusing new trials where judgments are reversed. The discretion should be exercised by appellate courts in that direction
only in cases where it is entirely plain, either from the plead-

ings or the very nature of the controversy, that the party against whom the reversal is pronounced cannot prevail in the suit. It is not sufficient, to refuse a new trial, that it is highly improbable that the party upon reversal can succeed upon the new trial. It must appear that he certainly cannot." *New* v. *Village*, 158 N. Y. 41, 43. Does not the last clause quoted go too far? I think the statement of law in 3 Cyc. 454, more sound, and that is, that a new trial will be awarded "whenever it appears to be necessary for the purposes of justice;" "whenever it appears that the ends of justice will best be served by such course." The party has had one jury trial. It is fairly presumable that he presented all the evidence of his case. He has submitted this case upon the evidence. Is the appellate court to surmise and guess that he can produce more? If he did not produce it, he is guilty of negligence. If he discovered it before judgment, we presume he would have made it the basis of a motion in the lower court for a new trial. If he discovered it after judgment, and he is guilty of no negligence, and it is of proper import, it is basis for equity action. Is the appellate court not to presume that he cannot better his case, unless it sees that he can or may? I see no difference, in this respect, between a case tried by a court and one tried by a jury. It is in the discretion of the appellate court in either case to grant a new trial, but only when justice appears to demand it. But the matters just mentioned, though relative to the general subject, are not the question before us. That is much plainer against a new trial. We have the case of a motion to direct a verdict improperly overruled. The jury found that Maupin had not complied with the policy, but was excused by the agent, which could not in law be. And no evidence tended to show any excuse for leaving the books in the store to be burnt.

Therefore, we reverse the judgment, set aside the verdict, and render judgment for defendant.

Note by BRANNON, JUDGE :

"Where, in a policy of insurance, there is an express stipulation that 'no agent has power to waive any condition of this policy,' the insured, by acceptance of the policy, is estopped

from relying upon any agreement made with an agent having the effect af waiving one of the conditions enumerated in the policy." *Thornton* v. *Travellers Ins. Co.*, (Ga.) 42 S. E. 287.

"If one who is dealing with an agent knows that he is acting under circumscribed and limited authority, and that his act is outside of and transcends the power conferred, the principal is not bound, whether the agent is general or special, because principals may limit the power of one as well as the other. If a policy of insurance declares that no officer or agent has power to waive any provision or condition embraced in a printed or authorized policy, but may waive certain added conditions, provided such waiver is written on or attached to the policy, an attempted wiaver by an agent of one of the conditions which the policy declares he shall not have power to waive, is inoperative and void." *Quinlan* v. *Providence Ins. Co.*, 133 N. Y. 356, 28 Am. St. R. 654.

. "Where a policy of insurance itself contains an express limitation upon the power of the agent, he has no right to contract, as against the company, with the party to whom the policy has been issued, so as to change its terms, or dispence with the performance of any part of the consideration, either by parol or in writing, and the insured is estopped by accepting the policy from setting up powers in the agent at the time in opposition to the conditions in the policy." *Wiedert* v. *State Ins. Co.*, 19 Oregon 261, 20 Am. St. 809. To the same effect *Cleaver* v. *Ins. Co.*, (Mich.) 8 Am. St. R. 908; *German Ins. Co.* v. *Heiduk*, 30 Neb. 288, 27 Am. St. R. 402. "We must take the contract (policies) as we find them and enforce them as they read," says the late case *Roback* v. *Ins Co.*, 62 N. Y. 47, 20 Am. R. 451; 88 Am. St. R. 779.

In the face of the right of parties to contract, in the face of a plain denial in that contract of any power in the agent to dispense with a reasonable provision to protect one of its parties against fraud or uncertain evidence of loss, it is gravely claimed that an agent can dispense with such reasonable provision, though the party knew of such denial of the agent's power, and the evidence defined by the contract as to amount of loss is dispensed with, and evidence by estimate based on guessing is made the base of recovery. May not an insurance

company make provisions to protect itself against fraud or un-
certain evidence of loss, and to save itself from the fraud, col-
lusive and loose declarations of even its own agents? A court
may construe a contract, but can it go straight against its let-
ter, its admitted meaning, and impair it, abrogate it? The
Legislature could not. A court should not do so, even if there
be no constitutional impediment. It ought to think of the
prohibition in the Constitution against the Legislature and
adjudge by analogy.

Indeed, it is not going far to say that such decision violates
the 14th amendment and the state Constitution providing that
no person shall be deprived of life, liberty or property with-
out due process of law. Liberty includes right of lawful
contract. When the letter of a contract is admitted by even a
court to mean only one thing, and it is not a matter of con-
struction of it, but only whether it shall be enforced, and the
court refuses to enforce it, is not the Constitution violated?
I do not forget that a decision of a court, though wrong, is
"due process of the law"; but should not a court even refuse
thus to impair a contract and thus in spirit nullify the Con-
stitution?

*Petition Refused.*

POFFENBARGER, JUDGE, (*dissenting*):

The conclusion reached by the majority of the Court in
this case is ground mainly upon the decision of the Supreme
Court of the United States in *Northern Assurance Co.* v.
*Grand View Building Association,* 183 U. S. 308. It is to be noted
that in that case, the court were not all of the same opinion.
Chief Justice Fuller and Justices Harlan and Peckham dissen-
ted. While I look upon the decisions of that great tribunal
with the utmost deference, I am bound to remember that its
members are, after all, only men, who, although justly celebra-
ted for their learning and wisdom, sometimes fall into error.
That court has overruled many of its own decisions, as all
other courts have done, and, if in the future, it shall find that
it has erred in the case above referred to, it will not hesitate
to discard the rule there announced. The decision is only per-
suasive, not binding, authority upon this Court, and for two rea-

sons I think it ought not to be followed. Though it applies to contracts of insurance well settled rules of law, the courts in a majority of the states, from the peculiar nature of the business of insurance, have established firmly an exception to these rules, based upon the principle of estoppel, and, in that list of states, West Virginia has been placed by the decisions of this Court. As admitted, in the majority opinion, *Wolpert* v. *Insurance Co.,* 42 W. Va. 647, and *Coles* v. *Insurance Co.,* 41 W. Va. 261, both declare and apply a rule contrary to that enforced in *Northern Assurance Co.* v. *Grand View Building Association;* and, as also admitted, *Coles* v. *Insurance Co.* goes further, holding that a general agent "May waive forfeitures and conditions in 'the policy, notwithstanding a provision therein that no agent has such power." This deliberate and solemn assertion found in the syllabus of that case is not cut down nor qualified to any extent whatever in the opinion of the Court delivered by JUDGE HOLT. He does say, a general agent has power to bind and to loose and no limitation on his power unknown to strangers will bind them, citing *Insurance Co.* v. *Wilkinson,* 13 Wall 222, and *Muhleman* v. *Insurance Co.,* 6 W. Va. 508. But, nevertheless he says: "As such general agent, it is held that he may waive forfeitures and conditions in the policy, *notwithstanding a provision therein that no agent has such power."* Not only did he say in the opinion what is held in the syllabus, but supported it by authority, cited, but not quoted, *Beebe* v. *Insurance Co.,* 53 N. W. 818, 93 Mich. 514, where it is held that, "The failure of an insurance agent, who is authorized to issue policies without first referring the applications to the company to indorse upon the policy the permission given by him to mortgage the insured property, as required by the terms of the policy, where the agent takes an active part in procuring the money for which the mortgage is given, and advises in regard to it, and assures the insured that he is protected by the policy; and this, even though the policy provides, *"That no agent, officer or other representative of the company shall have the power to waive any provision thereof except in writing."* Hence I am unable to see how it can be said, with any degree of plausibility, that the syllabus of *Coles* v. *Insurance Co.* was inadvertently or otherwise made broader than was intended, that the opinion

does not support, or is contrary to, the rule laid down in the syllabus, or that the announcement of that rule was not the result of the deliberate judgment of the Court. Both *Coles* v. *Insurance Co.* and *Wolpert* v. *Insurance Co.* were cases in which it was held by this Court that the companies were bound by notice to their agents, or verbal waivers or permission given by the agents, as to matters in respect to which the policies expressly stated they had authority to bind the companies *only by written endorsement on the policy*. That is the exact question upon which the court held exactly the contrary in *Northern Assurance Co.* v. *Grand View Building Association*. The rule adopted in this case is, therefore, contrary to that heretofore adhered to and applied by this Court. It is also undoubtedly against the weight of American authority.

After quoting the non-waiver clause of the Standard policy, the same as that found in Maupin's policy and in perhaps nearly all the fire policies held in this State, Elliott on Insurance says at section 301: "The prevailing rule seems to be that notwithstanding this provision, a general agent of the company may waive this as well as other provisions of the policy." At section 188 of the same work the following is found: "By the weight of authority, although the Supreme Court of the United States under a contract which required a waiver to be endorsed on the policy recently held to the contrary, an insurance company will not be permitted to take advantage of the condition contained in the policy to avoid payment of a loss when the facts rendering the policy void by its terms were known to the insurer at the time it issued the policy and accepted the premium. Such a policy, if void, is void from the moment of its delivery. This doctrine rests upon the ground that facts made known to the agent of the company, who is empowered by it to solicit insurance, countersign and issue policies and collect premiums, are known to the principal, and that a fraud would be perpetrated if an insurer, through the medium of its agents, were allowed to deliver its policy and accept the premium with knowledge of facts which under its provisions rendered it void *ab initio*, and thereafter assert its invalidity."

May on Insurance, edition of 1900, printed before the decision in 183 U. S., says, at section 137*a*, after referring to a

number of cases holding that an agent cannot bind his company beyond his authority as limited by restrictions stated in the policy: "It seems very doubtful if the doctrine of these cases is entirely correct. The assured has a right to suppose that a general agent has all the powers ordinarily incident to his business, unless he has knowledge to the contrary, and usage may overcome the provisions of a policy. In regard to waivers before issue *it is by no means clear that the constructive notice supplied by provisions of a policy* not yet in the hands of the applicant should be binding upon him. Prudent men are accustomed to rely upon the acts and statements of the agent, and they should be protected in so doing. Busy men have not time to study the interminable provisions of insurance policies. Only when the custom of limiting the authority of a general agent in the policy has become so general that it is a part of the ordinary business knowledge of the world that such provisions exist and are to be examined, will it be proper to hold the applicant bound by them in respect to negotiations prior to the issue of the policy." In the author's analysis of section 511 (see page 1181) he says: Opinions vary as to the effect of conditions against waiver by agent, or requiring all waivers to be in writing, or indorsed on the policy. It is held—that such provisions are valid; that they are null and void; that they do not apply to matters connected with the creation of the contract; and that they apply only to such matters. The courts in many instances show a tendency to repudiate the conditions as unreasonable. On the facts most of the cases are fair, and the consideration that *these conditions may themselves be waived as well as any others goes far to hamronize the decisions.*"

The decision in *Northern Assurance Co. v. Grand View Building Association* is undoubtedly supported by the Massachusetts, Vermont, Rhode Island, Lousiana and New Jersey cases, and the earlier New York and Michigan cases. Whether Pennsylvania may be so classed is doubtful. The later New York and Michigan cases assert the contrary doctrine. As to New York, Mr. Justice Shiras, who delivered the opinion of the court, admits it, citing *Robbins* v. *Insurance Co.,* 149 N. Y. 884; *Wood* v. *Insurance Co.,* 149 N. Y. 385 and some others. But there is a later one which he

did not cite, *Skinner* v. *Norman,* 165 N. Y. 565; (59 N. E. 309) in the opinion in which it is said: "The main question presented on this appeal is very narrow. It is well settled law in this state that the agent of a fire insurance company may, by issuing a policy with knowledge of the facts, waive a condition that the policy shall be void if the property insured be incumbered, and a note of the incumbrance be not indorsed upon the policy, notwithstanding a provision in the policy that no agent of the company shall have power to waive any such condition, except by written endorsement." There was a mortgage on the property of which the agent had notice and made no indorsement of the fact on the policy or in the application, but the court held the policy valid on the ground of estoppel or waiver based upon the knowledge of the agent. Two Michigan decisions, cited by Mr. Justicve Shiras, support his proposition. Namely, *Cleaver* v. *Insurance Co.,* 65 Mich. 527, and same case in 71 Mich. 414. But the later case of *Beebe* v. *Insurance,* 93 Mich. 514, the contrary holding in which has been hereinbefore noted, is not referred to by him. Of the *Cleaver Case.* Long, J., delivering the opinion of the court in the *Beebe Case,* said: "If the *Cleaver Case, supra,* is to be construed as laying down such a doctrine as contended for here, it ought at once to be overruled." Further examination reveals the still later cases of *Match Co.* v. *Insurance Co.,* 122 Mich. 256, and *Pollock* v. *Insurance Co.,* 127 Mich. 460. In the former case the policy contained the usual clause limiting the powers of the agent, but point 3 of the syllabus reads as follows: "The provisions of a fire insurance policy declaring it void if the subject of insurance be a manufacturing establishment, and be operated later than ten o'clock at night, and denying the authority of the agents to waive any condition of the policy, except by written agreement duly indorsed, will not avail the insurer as a defense, where the subject of insurance, a factory, is destroyed by fire while being operated after 10 o'clock, if the insurer's agent who solicited the insurance and delivered the policy understood that the factory was in operation day and night; the issuer under such circumstances, being deemed to have issued the policy with knowledge of all the facts, and to be therefore estopped from setting up the same as a defense." The case in 127 Mich. holds, point 2 of the

syllabus, that, "When application is made to the agent of an insurance company for permission to remove insured property to another location, and the agent verbally consents to the removal, but fails to indorse such consent on the policy, such failure cannot be set up by the company as a defense to an action on the policy, notwithstanding a provision therein that no officer, agent or representative of the company shall have power to waive any provision or condition of the policy, or to grant any privileges or permission affecting the insurance, except by writing so indorsed." In view of these late Michigan decisions, it must be admitted that the rule announced in *Northern Assurance Co.* v. *Grand View Association* is not the law in that state, and that, like New Yory, Michigan having once adopted it, has since found that it works injustice and thrown it aside.

A Pennsylvania case not noted in the opinion in *Northern Assurance Co.* v. *Grand View Association* holding doctrine contrary to the rule therein announced, and which seems never to have been overruled, is *Insurance Co.* v. *Spencer and Mc-Kay,* 53 Pa. St. 353, the syllabus in which reads in part as follows: "Where the insurance was on barley and malt in assured's malt-house and brewery," and condition was that the risk could not be increased without notice to the company and indorsement on the policy, the fact that the insured carried on distilling in the building would be fatal to the claim of the assured for loss, unless the company had notice of the distilling before the insurance. Notice to the agent of an insurance company is notice to the company. If the insurance was effected with full knowledge by the agent of the company that distilling was to be carried on, the condition as to endorsement of notice had no application, and the company could not allege an increase of risk." In legal effect the clause in that policy, requiring indorsement on the policy, limited the authority of the agent as completely as if it had said he could only grant the permission by such indorsement. That was not done. Nobody but the agent had notice and yet the company was held bound by the knowledge of the agent, just as this Court has held in *Coles* v. *Insurance Co.,* and in *Wolpert* v. *Insurance Co.* A very similar holding by the Pennsylvania court is found in *Insurance Co.* v. *Bruner,* 11 Harris 50, in the

opinion of which Lowrie, J., said, "Any other interpretation of this transaction would allow insurers to make a fraudulent use of the confidence which is always reposed in them at a treaty for insurance, and which they always invite." Point one of the syllabus reads as follows: 'Though it was provided in a policy of fire insurance that the conditions annexed were 'to be used and resorted to to explain the right and obligations of the parties' in cases not especially provided for; yet in an action by the assured on such a policy it was held that the assured might show the knowledge of the agents of the insurance company of the character of the property; that the description was as prepared by such agent; and that the omissions in the policy complained of by the company were made by him because he considered them immaterial; therefore the validity of the policy did not depend on the completeness of the written description." Here the Pennsylvania court deliberately refused to apply the rule against the admission of parol evidence to ascertain the rights of the parties, when they had reduced thier contract to writing, and the contract plainly imported that nothing but it and the papers annexed to it should be referred to or considered for that purpose. The apparent conflict between these Pennsylvania cases and those referred to in the *Northern Assurance Co. Case* is explained by May in his work on Insurance, sections 148-150. He says, "In Pennsylvania, also, the distinction between mutual and stock companies is regarded as essential," and then shows that the principles of waiver and estoppel are given broader application in the case of a stock company than in that of a mutual company. The two cases here cited involved contract with stock companies. Those referred to by Mr. Justice Shiras were mutual companies. Even in such cases knowledge of the secretary is held to estop the company. What is the secretary but an agent? He has only such powers as are conferred by the by-laws of the company. So of the president or any other officer of any corporation. In *Kalmutz* v. *Insurance Co.,* 186 Pa. St. 571, explained by Mr. Justice Shiras as not being in conflict with his position, the policy contained this clause: "Policies of all other insurance upon property herein described—whether made prior or subesquent to the date hereof—must be endorsed on this policy, otherwise the insurance shall be void." Did not this

provision clearly withhold from every officer and agent of the
company power to waive a condition by verbal agreement? Most
assuredly. The taking of additional insurance without having
the fact endorsed on the policy did, by express stipulation
in the policy, render the insurance void. How can it be said
that the letter of the contract did not deny to any mere repre-
sentative of the company authority to bind it by verbal agree-
ment as to additional insurance?' Yet the Pennsylvania court
said: "Defendant company's secretary testified that he had
notice of additional insurance on the first Wednesday of No-
vember, 1894. Notwithstanding that notice to the company,
the policy was neither recalled nor cancelled; the premiums
or assessments collected were not returned, nor was any effort
made to return the premium note given by the plaintiff, bind-
ing him to pay the premiums at such times and in such manner
as the company's directors might by law require. These facts
were admitted: and if, as the authorities appear to hold, they
operated an estoppel, it will be unnecessary to consume time
in the consideration of other questions sought to be raised by
several of the specifications of error." It was held that the
company was estopped from setting up as a defense the failure
to have the additional insurance indorsed on the policy. The
court did not decide whether the knowledge of the agent who
negotiated the insurance would work such an estoppel. Find-
ing that the secretary had the notice, the court deemed it unnec-
essary to say what was the effect of notice to the agent. Again
what in the law is the secretary but an agent and what rule
determines his authority, except the general law of agency?
Notice of limitation of his authority has exactly the same
effect as in the case of any other agent. He has only such au-
thority as is conferred upon him. His apparent authority
may be limited by a restrictive clause. "A president of a pri-
vate corporation has no authority by virtue merely of his offi-
cial position to make contracts binding the corporation, except
in relation to matters arising in the ordinary course of the
business of the corporation." 17 Am. and Eng. Ency. Law
126; *Bank* v. *Kimberlands,* 16 W. Va. 555. As to the powers
of the secretary of a private corporation, Clarke on Corpora-
tion says at page 2151, "unless authority is expressly con-
ferred, however, or he is clothed with apparent authority by

being intrusted with the management of the business, or a part of it, the secretary of a corporation has no authority to make any contracts on its behalf and in its name, or bind it by other acts. He has no such authority merely by virtue of his office." Officers of private corporations are governed for the most part by the law of agency. "It is well settled that the law of agency applies to officers of corporations." It does not appear that, in the *Kalmulz Case* there was any document or memorandum on file with the secretary, which could have been deemed to have brought the fact of additional insurance to the attention of the directors. The ground of the decision is merely that he, an agent of the company, had notice of the fact, and such notice bound the company on the principle of estopple. In view of these authorities and general principles of law which the Supreme Court of Pennsylvania must have applied in the case last mentioned, and in *Elliott* v. *Insurance Co.,* 66 Pa. 26, *Wilson* v. *Insurance Co.,* 174 Pa. 557, *Insurance Co.* v. *Robinson,* 56 Pa. 256, *Insurance Co.* v. *Todd,* 83 Pa. 279, and *Insurance Co.* v. *Taylor,* 73 Pa. 342, I confess my utter inability to see any substantial ground for any distinction, such as is claimed by Mr. May to have been asserted, and also to see that the Pennsylvania desicions can be said to support the rule enforced as law in the *Northern Assurance Company Case.*

States other than this that have applied the principles of waiver and estoppel, contrary to the rule so recently announced by the Federal Supreme Court, decline to change their rulings out of deference to that decision. Thus in *Insurance Co.* v. *McKnight,* 64 N. E. 339, the Illinois court through Carter, J., said: "Counsel for appellant have referred to cases holding otherwise, including *Northern Assurance Co.* v. *Grand View Building Association* (decided by the Supreme Court of the United States at its October term, 1901, by a divided court). 22 Sup. Ct. 133, 46 L. Ed. —; but we have adopted a different rule in this state, and it must be applied in this case." So also in *Thompson* v. *Insurance Co.,* 169 Mo. 12, 24, where, after discussing the *Northern Assurance Co. Case,* Marshall, J., said in conclusion: "Therefore, this court still adheres to the Missouri rule. And that rule applied to the facts in this case, results in holding that the defendant waived the provisions of the

policy concerning additional insurance. The agent of the company who issued the policy in suit, and who collected the premiums, and who transacted all the business of the company in Kansas City, Kansas, was fully authorized by the company to grant permits for additional insurance. He was the *alter ego* of the company in that city for all such purposes. He knew of the additional insurance before the loss. His knowledge is the knowledge of the company. He did not object, but allowed the plaintiff to rely upon the vitality of the policy; and no question was ever raised about that matter until after the loss. If the company desired to forfeit the contract for this reason, it should have acted during the life of the contract, and it should have returned the unearned portion of the premium. If it had done so the plaintiff could have secured other insurance. Instead of doing this, the company waited until after loss, until after the proof of loss, and until it was too late to secure other insurance. Such conduct clearly estops the defendant from making such a defense now." This is quoted to show not only the unaltered position of that court, but also the principle upon which it rests its position, and which is believed to be perfectly sound and maintainable upon well settled principles of law, as I will endeavor to show in a subsequent portion of this opinion. Another court to the attention of which the decision in 183 U. S. has been brought, without avail, is the Texas Court of Civil Appeals. See *Insurance Co.* v. *Nichols,* 72 S. W. 440, decided January 31, 1903. I have been able to find but one decision which expressly follows that in the *Northern Assurance Co. Case*: Namely, *Insurance Co.* v. *Lumber Co.*, 69 Pac. Rep. 938. decided by the territorial court of Oklahoma. That is a federal court and it is bound by the decisions of the Supreme Court of the United States.

Not only has the New York court turned away from its former strict ruling as has been shown, but other state courts are doing likewise, and the decided tendency is in that direction. In *Hunt* v. *Insurance Company,* 92 N. W. 921, decided by the Supreme Court of Nebraska, January 8, 1902, it was first held that a change of occupancy of the insured property, without the consent of the company indorsed on the policy, invalidated the policy. But a rehearing was allowed, and, on October 22, 1902, about eight months after the decision in 183

U. S., the case was again decided, the court holding as follows: "Breach of a condition in an insurance policy against vacancy or a change of occupancy does not of itself avoid the policy, but merely affords ground for forfeiture at the option of the insurer. If, with knowledge of the facts by reason whereof it is entitled to claim a forfeiture, the insurer continues to treat the policy as in force, or does any act inconsistent with an intention to insist upon the forfeiture, the forfeiture is waived. Notice of facts entailing a forfeiture to the local agent of the insurer, who has authority to issue policies, is notice to the insurer. *Insurance Co.* v. *Heiduk,* 46 N. W. 481, 30 Neb. 288, 27 Am. St. Rep. 402 limited." Here is found a deliberate change, after mature consideration, on the part of the Nebraska court from the strict rule adopted in the majority opinion, to the liberal one followed in Illinois, Missouri, Michigan, Iowa and numerous other states.

In Maryland the principle is regarded as being very well settled. "If such an agent has knowledge of the facts at the time he issued the policy, the company will be estopped from relying upon them as a cause of forfeiture. This principle is well sustained by authority; it rests upon considerations of common honesty; that an insurer with full knowledge of the facts, or chargeable with such knowledge shall not enter into a contract of insurance, receive the premiums thereon and then be permitted to set up those facts to evade the liabilities the contract imposes upon him. Nor does the clause providing that, "No officer, agent or other representative of this company shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be endorsed hereon or added hereto," etc., affect the question. It does not apply to the making of the contract, but to the provisions of the contract itself, after it has gone into effect, so as to prevent agents from modifying the terms of the policy after it has been issued." *Insurance Co.* v. *Keating,* 86 Md. 130, decided June 23, 1897. In the opinion the New York and Illinois cases bearing on the question are cited with approval.

In *Spalding* v. *Insurance Co.,* 52 Atl. Rep. 858 (N. H.), Chase, J., says: "In view of the decisions and legislation of the state, and the great preponderance of authority elsewhere, it must be held that the defendants would be estopped

from setting up the conditions relating to other insurance in avoidance of their liability under the policy, if the plaintiff's evidence was believed. If the rule thus followed conflicts with the rule which prevents a written instrument from being controlled by parol testimony, it has been so generally adopted and becomes so firmly fixed in the law of insurance that it must be regarded as an exception to the latter rule."

Additional cases found, enforcing the principles of waiver and estoppel are, *Allen* v. *Insurance Co.,* 133 Cal. 29; *Sharp* v. *Insurance Co.,* 136 Cal. 542, decided June 12, 1902; *Kruger* v. *Insurance Co.,* 72 Cal. 91; *Insurance Co.* v. *Dowdall,* 159 Ill. 179; *Insurance Co.* v. *Caldwell,* 187 Ill. 73; *Anderson* v. *Insurance Co.,* 59 Minn. 182; *Mesterman* v. *Insurance Co.,* 5 Wash. St. 524; *Havens* v. *Insurance Co.,* 111 Ind. 90; *Bennett* v. *Insurance Co.,* 70 Iowa 600.

But it is argued, that, conceding the principle of the forgoing cases to be correct, and that of Northern Assurance Co. against the weight of authority and unsound, this case is to be distinguished from them on the ground that in the policy itself the agent was expressly forbidden to waive the "Iron Safe Clause" at all, in writing indorsed on the policy or otherwise. This distinction is not very perceptible. In either case it is want of authority. In the one it is the lack of power to do the act except in a particular manner. In the other it is lack of authority to do it at all. In both it is want of authority, and lack of power to waive under the strict rule applied. Violation of the restriction in either case makes the policy void by express provision thereof. But if there is ground for such distinction on the the assumption that the "Iron Safe" clause is a part of the policy within the meaning of the non-waiver clause, it is very clear that that assumption is without foundation. The "Iron Safe" clause is not a part of the printed policy. It is on a slip sent to the agent with the policy and detached from it, and which the agent pasted on the policy. Nothing in the policy indicated whether the agent was bound to attach it. On that subject the policy is absolutely silent. As the agent had power to put it on, Maupin might well assume and believe, he had power to leave it off. And if he had discretion either to put it on or leave it off, he had authority to waive it. If there was any restriction upon his authority in

this respect, the policy did not show it, and it is not pretended that such want of authority was in any other way brought to his attention. Of the same kind of clause so attached, the Supreme Court of Illinios said in *Insurance Co.* v. *Brown*, 123 Ill. 356: "If he was clothed with discretion to make the provisions contained in the slip a part of the policy or not, as he should see fit, he certainly had the power to waive them after the slip was attached. But, whether he had such discretion or not, we think that, if he waived the performance by appellee of the provision now under consideration, such waiver is binding upon the company. The proof tends to show that he was present in the store and saw the stock when the policy was issued; that he was also there on Saturday before the Monday when the fire occurred; and made no objection to the risk as it then stood; that on both these occasions he had notice that there was no fire-proof safe in the store." It does not appear from the report of the case whether the policy contained the usual non-waiver clause, but it probably did. If it did and had been noticed it would have made no difference, for the law in that state is announced in *Insurance Co.* v. *Dowdall*, 159 Ill. 179, as follows: "A clause in a policy of insurance that no officer, agent or other representative of the company shall have power to waive any provision or condition in the policy, may itself be waived by the company, through its agent."

It is true that on the printed slip so attached, this clause is found: "Agents of this company have no authority to waive these conditions." That slip appears to have contained six paragraphs, of which the first contained the iron safe and inventory provisions, the second, an inhibition of Terra Cotta flues in the building and the non-waiver provision above quoted, the third, a permission to keep oil and powder in the building, the fourth and fifth clauses, relating to the value and prorating with other companies, and the sixth making the application part of the policy. This printed and pasted slip bears the signature not of the company, its president or manager, but of the agent, which shows that the agent put it on the policy that it was no part of the policy until he did put it on. If he had no power to leave it off, in the particular case, or in cases of risks of that class, such want of authority was not in any way brought to the knowledge of Maupin. Hence,

the non-waiver clause on the slip must be construed to mean that after a contract has been made, and the policy accepted with the "Iron Safe" clause on it, the agent cannot afterward waive it.   The restriction clearly has no application to the making of the contract.   The principle stated in the New York, Maryland and Illinios cases applies with peculiar force here. They hold this as to the restriction of authority concerning conditions in the printed policy itself.   If, in making the contract the agent had discretion to leave off the whole of the slip, he could leave off any part of it.   So far as Maupin knew he had such discretion.   When Maupin received the policy and found the slip attached, he went to the agent with it and told him he had no iron safe and could not observe the condition as to taking an inventory and keeping an account of sales, all contained in the same clause, and was told by the agent to go on and conduct his business as he had been doing, and take an invoice once or twice a year.   This was before the premium was paid or the policy accepted.   It was at the inception of the contract, when the agent apparently, at least, had discretion concerning the iron safe and inventory clause.   Under the rigid principles of the majority opinion, the agent had power to waive, and, on the evidence, the jury has found, as a matter of fact, that he did waive.   Hence, the judgment ought not to be disturbed.   It was an express waiver.   Not a mere waiver in law by way of estoppel.   In such case the doctrine of estoppel has been applied.   "Where the defendant's agent, in soliciting an insurance risk, went in person and examined plaintiff's building, and knew that it contained a doctor's office upstairs, and that the plaintiff kept no iron safe, and did not intend to get one until the following fall, the company was estopped to claim a forfeiture of the policy because plaintiff had no iron safe, and because the hazard was increased by plaintiff's letting the second story of the building to a doctor, who occupied the same with drugs and medicines."   *Insurance Co.* v. *Randle,* 33 So. Rep. 500, decided by the Supreme Court of Mississippi, February 23, 1903.   In the opinion the court says: "To deliver a policy with full knowledge of facts upon which its validity may be disputed, and then to insist upon these facts as grounds of avoidance, is to attempt a fraud, and the courts will not hear the insurance company to say that it knowingly made

and delivered to the assured what it knew at the time to be an invalid policy, and that therefore it is not liable for the loss sustained." See also *Hanover Fire Insurance Co.* v. *Dole,* 50 N. E. 772.

The conclusion reached by the majority of the Court is by them placed upon the ground that certain legal principles, relating to agency and to written contracts, will not consistently allow any other. An agent cannot bind his principal beyond the authority conferred upon him, and the principal may limit the authority of his agent. He who deals with an agent is bound to know the extent of the agent's authority. All this is admitted. All verbal collocutions ante-dating the written contract and relating to the subject matter thereof are deemed to be merged in the written contract, and it cannot be varied, contradicted or added to by parol evidence. These general propositions cannot be denied. But there are others equally elementary and as rigidly enforced by the courts. One of these is the following: "The law imputes to the principal, and charges him with, all notice or knowledge relating to the subject matter of the agency which the agent acquires while acting as such agent and within the scope of his authority." Meshen on Agency, section 721. After discussing this rule at length, the same author says at section 729: "These rules apply with particular force to the case of corporations. From the very nature of the case, the executive functions of a corporation can only be experienced through the medium of corporate agents to whom and through whom all notice to the corporation must come. Notice to the officers and agents of a corporation, therefore, in reference to those matters to which their authority relates, is notice to the corporation." There is still another proposition in the law of agency, directly applicable here. The principal is liable for the wrongful, fraudulent or deceitful act of the agent committed within the scope of his authority. Mechem Agency, section 739. "The deceit was done for the defendant's benefit by their agent acting under their orders, in the conduct of their general business, and responsible to them; and when one party must suffer by the wrong and misconduct of another, it is more reasonable that he should sustain the loss, who reposes the confidence in the agent, than he who has given no such confidence. *Hern* v. *Nichols,*

1 Salk. 289. *The point is well illustrated by the law of insurance, where the party is always held responsible civiliter, for the fraudulent misrepresentation or other deceit, or for the negligence of his agent. Fitzherbert* v. *Mather,* 1 T. R. 12. But the rule is not confined to cases of insurance, in relation to which a somewhat stricter morality, perhaps, is held to prevail; but it is laid down as a general rule of the common law, that the principal is civilly responsible for the acts of his agent." Shaw, C. J., in *Luke* v. *Stearns,* 1 Matc. (Mass.) 560. When the agent is clearly acting for his own benefit and in hostility toward his principal, these rules do not apply, but the agent in this case did not so act. He took the insurance for his principal and acquired no personal advantage thereby, except his usual commission strictly within the scope of his authority and the line of his employment. By his wrongful persuasion and misrepresentation and pretense of waiver he induced Maupin to accept the policy and pay the premium, knowing or being bound to know, he was taking the man's money for his principal and giving him no protection for his property. I do not mean to say he acted fraudulently or willful wrong. It is enough that he acted negligently or carelessly, or was honestly mistaken in what he represented. Mech Age'y. section 739. In Elliott on Insurance at section 164, it is clearly shown that the rule of constructive notice, whereby the principal is held bound by the knowledge of his agent, is applied in the law of insurance. The only controversies seem to be over the question as to who are agents within the meaning of the rule, and whether in order to so bind the company the knowledge must have been acquired by the agent while acting for the company in respect to the risk.

Another well settled proposition of law, lying athwart the path of the defense set up here is that a party to a contract cannot hold on to that part of it which is beneficial to him and reject the part which imposes upon him a liability. If his agent, without a shadow of authority, makes a contract for him, and he accepts a benefit under it, he thereby ratifies the entire contract and the unauthorized act of the agent and must perform. He must restore what he has received under it before he can rescined it, and relieve himself of the liability imposed upon him. *Bank* v. *Kimberlands,* 16 W. Va. 555.

"The acceptance of the benefit of a contract made by the president for the bank is an implied ratification of such contract, and if money is received by its cashier for the bank under such contract, even when such receipt was unknown to the directors, it will be a confirmation of the contract, unless the money so received is returned, when its receipt becomes known to the directors." *Bank* v. *Kimberlands, supra,* (syl. point 9). This law is applied in just such cases as this. *M. W. of A.* v. *Coleman,* 94 N. W. 814 (Neb.). In *Northern Assurance Co.* v. *Grand View Building Association,* 183 U. S. 309, the premium received by the company was tendered to the insured before the suit was brought against it.

The business of insuring against fire was commenced, and originally prosecuted, under all the general propositions of the common law. Insurers had the benefit of all those principles relating to written contracts excluding oral evidence tending to contradict them. These ancient safe-guards, which so well answer the ends of justice in all other lines of business, seem not to have given insurance companies all the advantages they desire and to evade them all manner of restrictive provisions have been inserted in their proposed contracts, prepared under the skillful direction of learned advisers, and then placed in the hands of agents who are induced by liberal commissions allowed, to actively urge them upon the busy farmer, merchant and manufacturer, who would have the greatest difficulty in comprehending the meaning of all their interminable provisions, even if he attempted to do so. Having vainly tried many expedients to relieve themselves from the liabilities and obligations imposed by the rules of law governing all other branches of business, they have resorted, in recent years, to the insertion in their policies of this clause restricting the powers of their agents. But that clause clearly fails to supersede the law of notice, the law of ratification of unauthorized acts of agents, the law making the principal liable for the negligent, wrongful or fraudulent act of his agent, and the law of equitable estoppel.

Thus far I have proceeded upon the assumption that the decision in *Northern Assurance Co.* v. *Grand View Building Association* has been correctly interpreted by the counsel for the plaintiff in error, the majority opinion in this case, and the

other courts and the text writers, to whose attention said case has been brought. But a careful reading of the opinion, in view of the facts therein stated, leads me to the conclusion that the decision does not go to the extent claimed nor support the conclusion of the majority of this Court.

As might well have been supposed, the elementary principles, to which reference has been made, were kept in view, and observed by Mr. Justice Shiras and the five other members of the Supreme Court of the United States, in reaching their conclusion in *Northern Assurance Co.* v. *Grand View Building Association* else a majority of that court might not have come to the determination finally reached. A close reading of one of the concluding paragraphs of the opinion will make this fully manifest, and for that reason it is quoted in full:

"It is not pretended, as we understand the plaintiff's position, that *by any language or declaration of an agent, at the time the policy was delivered and the premium paid, he claimed to have power to waive any provision or condition of the policy, nor that the plaintiff was induced to accept the policy by any promise of the agent to procure the assent of the company to permit the outstanding insurance and to waive the condition.* The plaintiff's case stands solely on the proposition that because it is alleged, and the jury have found that the agent had notice or knoledge of the existance of insurance existing in another company at the time the policy in suit was executed and accepted, and received the premium called for in the contract, thereby the insurance company is estopped from availing itself of the protection of the conditions contained in the policy. In other words, the contention is that the agent with no authority to dispense with or alter the conditions of the policy could confer such power upon himself by disregarding the limitations expressed in the contract, those limitations being according to all the authorities presumably known to the insured. It was not shown that the company, when it received the premium knew of the outstanding insurance, *nor that when made aware of such insuranme it elected to ratify the act of its agent in accepting the premium.* On the contrary, all the record discloses is that the jury found that the agent knew, when the policy in the defendant company was issued and delivered to the plaintiff, that there was then subsisting

fire insurance to the amount of $1,500.00 in another fire insurance company, and that such knowledge had been communicated to the agent by or on behalf of the insured.   There is no finding that the agent communicated to the company, or to its general agent at Chicago, at the time he accounted for the premium, the fact that there was existing insurance on the property, and that he had undertaken to waive the applicable condition.   Indeed, it appears from the letter of the defendant's manager at Chicago, to whom the proofs of loss had been sent, which letter was put in evidence by the plaintiff, and is set forth in the bill of exceptions, that the additional insurance held by the plaintiff was without the knowledge or consent of the company; *and it further appears and was found by the jury, that immediately on the company's being informed of the fact, the amount of the premium was tendered by the agents of the company to the insured.   So that there is not the slightest ground for claiming that the insurance company, with knowledge of the facts, either accepted or retained the premium.*   The plaintiff's case, at its best, is based on the alleged fact that the agent had been informed, at the time he delivered the policy and received the premium, that there was other insurance.   The only way to avoid the defense and escape from the operation of the condition, is to hold that it is not competent for fire insurance companies to protect themselves by conditions of the kind contained in the policy.   So to hold would, as we have seen, entirely subvert well settled principles declared in the leading English and American cases, and particularly in those of this court."

From this it must be apparent that the assumption that the conclusion upon the widely different facts of this case must be the same as that reached in the *Northern Assurance Co. Case,* is palpably erroneous, and that it is erroneous and at variance with the fact to assume that the highest court of the land has ignored the well settled principles of law, making the principal responsible for the misconduct and negligence of his agent in the prosecution of his business, prohibiting him from accepting and retaining, after knowledge of the facts, the benefit of a voidable contract and rejecting its obligations, and holding him conclusively bound by an implied ratification of the whole contract when he does so retain the money received under it.

*Northern Assurance Co.* v. *Grand View Building Association* is not authority for the position, that the principles of waiver and estoppel have no place in the law of insurance. It is not asserted in the syllabus of that case that there can be no waiver or estoppel. The holding is that the mere fact that the agent had notice or knowledge of the existence of other insurance will not work a waiver or estoppel. The language is, "because its agent had notice or knowledge of the existence of other insurance in another company at the time he delivered the policy and received the premium."

While many of the courts have said, the breach of a warranty in a policy of insurance renders the policy void, a moment's thought produces the conviction that the word "void" must have been used in the sense of "voidable." No court has ever intimated that the company issuing the policy cannot waive such breach. Of course it can, and as it can do so, and thereby bind itself to perform, nothwithstanding the breach, the violation of a condition or warranty renders the policy voidable only and not absolutely void. Hence, aside from the question of the authority of the agent to waive the condition, it must be ascertained whether the company itself has not waived it, or ratified the unauthorized conrtact made by the agent. As has been shown, this distinction was at first overlooked by the Supreme Court of Nebraska, and a decision rendered conflicting with the idea of the voidable character of the contract after breach of condition, but it has been corrected by a recent decision of that court. The *Northern Assurance Co Case* stands upon a state of facts wholly different from those of this case. Here the insurance company, after having been fully informed of all the facts, retained the premium and thereby impliedly ratified the contract as made by the agent. In *Northern Assurance Co.* v. *Grand View Building Association* the premium was tendered to the insured as soon as knowledge of the facts came to the company. It elected to rescind. Plaintiff in error here has ratified by retaining the premium. I am afraid less attention has been given this apparently small matter than it merits. The Supreme Court of the United States evidently regards it as being important, for it keeps it constantly in view. In *Insurance Co.* v. *Wolff,* 95 U. S. 326, Mr. Justice Field directed attention to it as being a material fact,

saying: "There is no evidence that the company in any way, directly or indirectly, sanctioned a disregard of the provision with reference to any forfeitures, except such as occurred from non-payment of premiums. *'As soon as it was informed of the residence of the insured within the prohibited district, it directed a return of the premium subsequently paid.'*"

In another respect also this case differs from that upon the authority of which it has been decided. There the agent made no representation as to his authority and did nothing to induce the acceptance of the policy. Here he did. After objection had been made, and before final acceptance of the policy, he advised the insured that it made no difference that he had no iron safe, and that he need not keep an account of cash sales, nor make the inventory as required by the policy, and that he could go on with his business just as he had been doing, taking an inventory once or twice a year and taking care of his books as best he could. He undertook to waive the entire clause, for Maupin objected to the entire clause and said he could not live up to it. Maupin knew and dealt with the company only through the agent. As the agent wrongfully induced him to accept and retain the policy and somebody must suffer loss on account of his misconduct it should be his principal, who held him out to the public and to a limited extent vouched for his character and reliability.

Whether under the principles, which in my opinion govern the case, the rulings of the court on the pleadings, evidence and instructions are correct, I say nothing here. The conclusion of the majority goes far beyond all those questions and gives judgment for the defendant, and it is enough for me to give my reasons for not concurring in that conclusion.